UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS LLC, JOHN WILEY & SONS, INC., and PENGUIN RANDOM HOUSE LLC, | : : : : |
| Plaintiffs, | : |
| -against- | : |
| INTERNET ARCHIVE and DOES 1 through 5, inclusive, | : : |
| Defendants. | |

Case No. 1:20-cv-04160-GJK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPORT OF RULE 26(f) MEETING AND PROPOSED CASE MANAGEMENT PLAN**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on August 20, 2020 and exchanged communications thereafter, and submit the following report of their meeting for the Court's consideration.

**I.     SUMMARY OF CLAIMS AND DEFENSES**

**A.     Plaintiffs' Summary**

1.     Plaintiffs Hachette, HarperCollins, Penguin Random House, and Wiley (collectively, "Plaintiffs" or "Publishers") bring this copyright infringement action against Internet Archive ("IA") for operating a website from which consumers download illegally scanned copies of Plaintiffs' copyrighted books.  In marketing, IA cloaks its activity under various names, such as "Open Library" and "National Emergency Library, even though, unlike real libraries, IA does not respect copyright law.  IA operates its infringing service under an ever-changing set of rules that it invented and changes as it sees fit.  The set of rules that IA refuses to abide by, however, are those set forth in the Copyright Act.

1

2.      IA is engaged in willful mass copyright infringement by, among other things, scanning print books published by Plaintiffs, uploading these illegally scanned books to its servers, and distributing verbatim digital copies of the books in whole via public-facing websites, without any license from or payment to Plaintiffs or their authors.  With just a few clicks, any Internet-connected user can download *complete* digital copies of in-copyright books.  IA currently distributes digital scanned copies of over 1.3 million books, including vast numbers still within the term of copyright protection.  Plaintiffs' action identifies 127 books published by the respective Publishers (the "Works") as representative examples of IA's infringing reproduction, display, distribution and public performance of their books.

Plaintiffs assert two causes of action, one for direct copyright infringement and one for secondary copyright infringement.  IA's fair use defense is not supported by the facts or the law.  No court has ever held such systematic, mass-scale, verbatim copying of entire books to constitute fair use.

**B.    Defendant's Summary**

The Internet Archive, a 501(c)(3) public charity, is a nonprofit library that carries out the essential work of libraries everywhere:  to collect, preserve, and share knowledge.

Controlled Digital Lending ("CDL") is the means by which the Internet Archive and other libraries digitize physical books in their collections and lend out those digitized books to patrons.  CDL replicates longstanding brick-and-mortar practice:  Only one person can borrow a single copy at a time.  Further, the Internet Archive's digitized books are loaned out to patrons using the same industry-standard technical protections that publishers themselves use to make books available electronically.

The Internet Archive partners with libraries across the country to lend digitized books.  During normal times, the Internet Archive imposes waitlists for digitized books, in order to ensure

that it does not lend out more digitized books than participating libraries physically hold. For example, if participating libraries have five physical copies of a particular book, once five patrons have checked out that book, subsequent patrons must wait to until one of the five patrons checks the book back in.  (The Internet Archive calls this the "owned-to-loaned" ratio.)

During the early days of the COVID-19 crisis, in response to urgent pleas from teachers and librarians whose students and patrons had been ordered to stay at home, the Internet Archive decided to temporarily permit lending that could have exceeded the one-to-one "owned-to-loaned" ratio.  This program was called the National Emergency Library.  The Internet Archive always planned to discontinue it, once the emergency need had passed.  And twelve weeks later, after other options had emerged to fill the gap, and the Internet Archive returned to the traditional CDL approach.

The Internet Archive's CDL program was carefully designed to ensure compliance with United States copyright law.  CDL serves the public by facilitating preservation of works, access, and research—all classic fair use purposes.  Copyright law does not stand in the way of libraries' right to lend, and patrons' right to borrow, the books that libraries own.

## II.     SUBJECTS ON WHICH DISCOVERY MAY BE NEEDED

The parties anticipate taking discovery on the following subjects, among others, but expressly reserve the right to object to the scope or necessity of discovery regarding each of the these topics at a later date.

- All aspects of the operations of the Internet Archive, Open Library, and National Emergency Library, including without limitation the development and application of "Controlled Digital Lending."

- Defendant's reproduction, display, distribution, and public performance of Plaintiffs' Works alleged in the Complaint.

- Defendant's fair use defense and other defenses.

- Defendant's justifications for and promotion of "Controlled Digital Lending."

- Plaintiffs' legal and contractual rights in the Works cited in the complaint, and the copyright registration for such Works.

- Plaintiffs' sales, licenses, or agreements relating to the Works.

- Plaintiffs' enforcement actions related to the Works.

- Plaintiffs' actions related to the Works during COVID-19.

- Damages, including Plaintiffs' claims for damages for willful infringement, as permitted by the Copyright Act.

### III.  ELECTRONIC DISCOVERY AND PRESERVATION OF DOCUMENTS AND INFORMATION

The parties confirmed that they have taken steps to preserve documents and information relevant to the claims and defenses at issue in this action, including those outlined in Plaintiffs' counsel's letter to defense counsel dated June 30, 2020. The parties discussed an electronic discovery protocol and agreed that they will produce documents as bates-stamped TIFF files, except that spreadsheets, database files, and audio/video files will be produced in native format, and agreed to discuss additional document production specifications as needed. The parties agreed to work together to streamline discovery, including by aggregating certain voluminous data produced concerning Defendant's operations and the Works in the form of spreadsheets (in addition to the production of relevant requested underlying data). The parties have further agreed to accept service via email (except for any documents to be filed with the Court via ECF, in which case service will be automatically effected).

In addition, the parties anticipate that some of the documents and information to be exchanged in discovery will contain confidential, commercially sensitive, and/or proprietary information. Accordingly, the parties agreed that a protective order will be necessary to maintain

the confidentiality of said information and will submit a proposed protective order for the Court's consideration at a later date.

## IV.     PROPOSED DISCOVERY PLAN

The parties will conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York and jointly propose to the Court the discovery plan outlined below.

| | |
|---|---|
| Deadline to Exchange Initial Disclosures | September 11, 2020 |
| Deadline to Complete Fact Discovery | May 21, 2021 |
| Deadline to serve expert disclosures on issues with respect to which the parties bear the burden of proof | July 6, 2021 |
| Deadline to serve rebuttal expert disclosures | August 20, 2021 |
| Deadline to complete expert depositions | September 20, 2021 |

## V.     LIMITATIONS ON DISCOVERY

The parties did not agree to any limitations on the number of interrogatories, requests for production, or requests for admission that may be served, except to the extent provided by the Federal Rule of Civil Procedure and/or the Local Rules of the Southern District of New York. With respect to the number of depositions, Plaintiffs currently do not anticipate taking more than ten depositions.  As there are four unaffiliated Plaintiffs, Defendant may need to take more than ten depositions.  In the event that any party designates more than one 30(b)(6) witness, the parties will work together to determine how 30(b)(6) witnesses will count toward the deposition total. In the event any side seeks to take more than ten depositions, the other side reserves the right to object.  The parties further agree that expert depositions do not count toward the above anticipated limits on the number of depositions.

## VI.  PRIVILEGE LOGS

The parties agreed that they will not log any communications between the parties and their outside litigation counsel in this action, or any privileged communications sent after June 1, 2020, the date the Complaint was filed. The parties will continue to discuss ways to reduce the burden of privilege logging, including by exploring the use of categorical privilege logs.

## VII.  PLEADING AMENDMENTS AND JOINDER OF ADDITIONAL PARTIES

The parties agree to the following deadlines for pleading amendments and the joinder of additional parties.

| | |
|---|---|
| Deadline to amend Complaint to add additional works in suit | November 1, 2020 |
| Deadline to amend Complaint for any other purpose<br><br>(If Plaintiffs file Amended Complaint within the foregoing deadlines, Defendant shall have twenty-one days to file an Answer in response.) | December 1, 2020 |

## VIII.  ANTICIPATED MOTIONS

The parties anticipate filing cross-motions for summary judgment after discovery is completed.

## IX.  SETTLEMENT

The parties have discussed settlement but have been unable to reach any agreement.

Dated: August 28, 2020

Respectfully submitted,

| DAVIS WRIGHT TREMAINE LLP | DURIE TANGRI LLP |
|---|---|
| */s/ Elizabeth A. McNamara*<br>Elizabeth A. McNamara<br>Linda Steinman | */s/ Joseph C. Gratz*<br>Joseph C. Gratz (*Pro Hac Vice*)<br>Jessica E. Lanier (*Pro Hac Vice*) |

John M. Browning
Meredith I. Santana
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
       lindasteinman@dwt.com
       jackbrowning@dwt.com
       meredithsantana@dwt.com

OPPENHEIM + ZEBRAK, LLP

Matthew J. Oppenheim
Scott A. Zebrak
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
Email: matt@oandzlaw.com
       scott@oandzlaw.com

*Attorneys for Plaintiffs*

Aditya V. Kamdar (*Pro Hac Vice*)
217 Leidesdorff Street
San Francisco, CA 94111
Phone: (415) 362-6666
Email: jgratz@durietangri.com
       jlanier@durietangri.com
       akamdar@durietangri.com

Allyson R. Bennett (*Pro Hac Vice*)
953 East 3rd Street
Los Angeles, CA 90013
Phone: (213) 992-4499
Email: abennett@durietangri.com

ELECTRONIC FRONTIER FOUNDATION

Corynne McSherry (*Pro Hac Vice*)
Kit Walsh (*Pro Hac Vice*)
Cara Gagliano (*Pro Hac Vice*)
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
Email: corynne@eff.org
       kit@eff.org
       cara@eff.org

*Attorneys for Defendant*