# Durie Tangri

Joseph C. Gratz
415-376-6407 (direct)
415-362-6666 (main)
jgratz@durietangri.com

October 29, 2021

**VIA ECF**

Hon. John G. Koeltl
U.S. District Judge
Daniel Patrick Moynihan United States Courthouse
Courtroom 14A
500 Pearl St.
New York, NY 10007-1312

Re:   *Hachette Book Group, Inc. et al. v. Internet Archive*, Case No. 1:20-CV-04160-JGK

Your Honor:

Pursuant to Local Civil Rule 37.2, Defendant Internet Archive respectfully requests a pre-motion discovery conference regarding a motion to compel Plaintiffs and the Association of American Publishers ("AAP") to produce responsive documents they are withholding based on assertions of attorney-client privilege, the common interest exception, and the First Amendment privilege.

This dispute concerns documents (i) responsive to the Internet Archive's requests for production served on Plaintiffs and (ii) responsive to the Internet Archive's subpoena served on the AAP.  These withheld documents are critical to the Internet Archive's fair use defense—specifically the fourth factor, market harm.  The varying views of publishers regarding whether they objected to the Internet Archive's activities, whether they regarded themselves as having been harmed by those activities, and whether that harm was of a large or of a small magnitude are key pieces of evidence as to whether Internet Archive's nonprofit library lending causes any substantial market harm.  And publishers' communications regarding the source of that harm—for example, if the Internet Archive's activities simply make it more difficult for publishers to agree among themselves on ebook prices, as they did in *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015)—will shed light on whether that harm is cognizable under the fourth factor.  Further, the Internet Archive is entitled to explore whether Plaintiffs and other publishers conspired here as they did in the *Apple* case; if so, such anticompetitive conduct *here* may support an additional defense which could preclude infringement liability.  *See Saks Inc. v. Attachmate Corp.*, No. 14-civ-4902-CM, 2015 WL 1841136, at *12 (S.D.N.Y. Apr. 17, 2015) ("[H]istorically, the defense of copyright misuse has been successfully asserted most often in cases where anticompetitive effects were alleged.").  Finally, withheld documents are likely to be relevant to the Internet Archive's laches defense.  The requested documents will shed light onto why the AAP (and Plaintiffs), despite being aware for years of the Internet Archive's digital lending library, waited until the summer of 2020 to sue.

Hon. John G. Koeltl
October 29, 2021
Page 2

Plaintiffs have produced privilege logs identifying withheld documents and the asserted privilege, but the AAP has declined to produce a privilege log.  *See* Fed. R. Civ. P. 45(e)(2).  It is clear to the Internet Archive, after seven written communications (letters and emails) and a lengthy telephonic meet and confer, that further discussions between the parties will not be productive.

### A. Plaintiffs Have Not Met Their Burden to Show An Attorney-Client Relationship Exists Between Plaintiffs And The AAP or That The Privilege Extends to Non-Parties.

Plaintiffs have asserted attorney-client privilege (and, in some instances, work product privilege) over: (i) communications between Plaintiffs and the AAP ("AAP Communications"), (ii) communications between Plaintiffs that include AAP staff and other AAP members ("AAP Member Communications"), and (iii) communications between Plaintiffs and third parties such as authors.  Plaintiffs have not met their burden to show that privilege applies to any of these types of documents.  Plaintiffs' basis for claiming attorney-client privilege protects the AAP Communications is that the AAP is a trade association and communications with its members, including Plaintiffs, containing "legal discussions" are privileged.  That position misunderstands the relevant law of privilege and its application to these facts.

First, mere membership in a trade association does not, by itself, create an attorney-client relationship.  *United States v. Am. Soc'y of Composers, Authors, & Publishers*, 129 F. Supp. 2d 327, 337-38 (S.D.N.Y. 2001), *as amended* (Mar. 14, 2001) (*ASCAP*).  Second, Plaintiffs have not demonstrated beyond conclusory statements in their privilege logs that communications with the AAP were exchanged to solicit, receive, or give legal advice rather than to discuss business concerns and interests.  *See In re Cty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged.").  Given the AAP's status as a trade association, communications with arguably privileged content are likely to also have responsive non-privileged content.  Where non-legal content predominates, privilege does not apply.  *See id.* at 421 n.8.  And even where legal content predominates, documents should be logged and produced in redacted form.  *Citizens Union of N.Y.C. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 171 (S.D.N.Y. 2017).

In these circumstances, scrutiny of the contents of the withheld communications is particularly warranted.  One of Plaintiffs' justifications for withholding their communications with the AAP is that some AAP staff members are attorneys.  But AAP employees who happen to be attorneys wear many hats.  For example, the President and CEO of the AAP is also a lawyer, as is AAP's Senior Vice President of Global Policy.  While it is conceivable that these executives do legal work for the organization, the burden is on AAP to justify why particular documents are privileged, given these executives' predominant business roles.  *See In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 323 (S.D.N.Y. 2020) (quoting *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-7060 (CM)(KHP), 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019)) (communications with attorney who fulfill multiple roles "must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice.").

With respect to AAP Member Communications, Plaintiffs cannot rely solely on membership of non-plaintiffs in the AAP to invoke the common interest exception.  First, for the exception to apply, the

Hon. John G. Koeltl
October 29, 2021
Page 3

common interest between parties must be "identical, not similar, and be legal, not solely commercial." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291(JSM), 2002 WL 1334821, at *3 (S.D.N.Y. Jan 19, 2002) (citation omitted).  Common interest does not exist solely because of a shared commercial goal or a joint business strategy—even if that strategy implicates a legal dispute.  *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("the common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation.").  Plaintiffs have not articulated an identical, legal common interest with all AAP members.  Further, Plaintiffs have not demonstrated that each AAP member copied on the AAP Member Communications contacted the AAP "for the purposes of seeking legal assistance."  *See ASCAP*, 129 F. Supp. 2d at 338.  Plaintiffs have not provided sufficient information to demonstrate the nature of the purported common interest or whether individual members copied on withheld communications sought legal assistance from the AAP, and accordingly, Plaintiffs have not met their burden.

Plaintiffs' privilege logs also suggest that AAP employees who were not attorneys were copied on withheld documents, including communications staff—which suggests that the predominant purpose of the document may not have been to secure legal advice.  *United States v. IBM Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("no protection attaches to a document prepared for simultaneous review by legal and nonlegal personnel.").  Finally, several entries on Plaintiffs' privilege logs reference communications either (i) solely between non-party third parties or (ii) between Plaintiffs and third parties (like authors and literary agents).  Plaintiffs have not met their burden to show that privilege extends to any of these third parties.

### B. The AAP Has Not Met Its Burden to Show the First Amendment Privilege Protects Withheld, Responsive Information.

In response to the Internet Archive's subpoena, the AAP is withholding responsive documents based on the First Amendment Privilege.  The First Amendment Privilege only applies when there is an objectively reasonable probability that compelled disclosure of the requested materials will chill associational rights.  *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 489-90 (10th Cir. 2011).  It is the AAP's burden, in the first instance, to demonstrate this reasonable probability.  Instead, the AAP has offered nothing but conclusory statements—and so has failed entirely to support, much less meet, its burden.

For the reasons explained above, and pursuant to Local Civil Rule 37.2 and Your Honor's Individual Practices Paragraphs 1F and 2B, the Internet Archive respectfully requests a pre-motion conference with the Court regarding an anticipated motion to compel production of all responsive documents.

Respectfully submitted,

Joseph C. Gratz