

Scott A. Zebrak
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC  20016
202.450.3758 | scott@oandzlaw.com

November 3, 2021

**Via ECF**
Hon. Ona Wang
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *Hachette Book Group, Inc. et al. v. Internet Archive*, Case No. 1:20-CV-04160-JGK

Dear Judge Wang:

We represent plaintiffs Hachette Book Group, Inc, HarperCollins Publishers LLC, John Wiley & Sons, Inc., and Penguin Random House LLC ("Plaintiffs") in this case in which fact discovery closes on December 17, 2021.  We also represent the Association of American Publishers ("AAP") as to the subpoena served on the AAP in this case.  We respectfully submit this opposition to the October 29, 2021 letter (Doc. 54) (the "Letter") from Internet Archive ("IA") requesting a Local Rule 37.2 Conference.  As explained below, the challenged documents sought from Plaintiffs and the AAP are plainly privileged communications, which were made for purposes of seeking legal advice, in anticipation of litigation, and/or for associational activities protected by the First Amendment.  IA's Letter also further overreaches as to the AAP subpoena.

## I.      Background

Plaintiffs are among the leading book publishers in this country.  IA is a mass infringer.  IA engages in industrial scale scanning of copyrighted print books; uploads the resulting eBooks to its Internet-connected servers; and distributes these eBooks in their entirety from its website for periods of up to 14-days—all under a contrived theory called "Controlled Digital Lending."

IA's claim to need the privileged communications to demonstrate lack of market harm from its actions for purposes of a fair use analysis is without merit.  IA offers a free substitute for Plaintiffs' authorized books.  *See, e.g., Capital Records v. ReDigi*, 910 F.3d 649, 662-63 (2d Cir. 2018).  IA engages in mass digitization and online distribution of millions of copyrighted books without any license from, or payment to, the rightsholders.  Email statements cannot undo the objective market harm that IA causes from its systematic copying and distribution.  The effort by IA, including its counsel of record at the Electronic Frontier Foundation ("EFF"), to obtain the AAP's confidential internal legal deliberations and related member communications reeks in the context of the ongoing public policy battles on Capitol Hill and elsewhere in which the AAP, on

the one hand, and IA and EFF, on the other, are on opposite sides of significant copyright issues.

## II.    The Challenged Communications Involving AAP Are Privileged

The AAP is a trade association representing the book publishing industry.  A principal AAP function is to advocate for and protect the legal rights of its member companies.  The AAP's chief executive is Maria Pallante, former Register of Copyrights and Director of the U.S. Copyright Office and one of the nation's leading copyright lawyers.  Pallante and other in-house AAP lawyers regularly provide and supervise legal representation of importance to its members.

Here, the AAP—including Ms. Pallante and other in-house attorneys—engaged in confidential legal communications with Plaintiffs and other AAP members to investigate IA's infringing activity and commence legal action.  As reflected in Plaintiffs' privilege logs, these discussions stretch back several years.  The AAP helped secure outside counsel to jointly represent Plaintiffs and it continues to provide legal advice and representation on the matter.  The law is clear that communications under these circumstances are privileged.  *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489(PLF/JMF/AK), 2010 WL 11570865, at *1-2 (D.D.C. Sept. 28, 2010) (communications between in-house lawyer for trade association and members of the association and those members' "agents and employees . . . fall within the attorney-client privilege" where "[t]he members of the [trade association] have specifically sought legal advice from a lawyer who is employed by [the trade association]").  Indeed, "[w]hen persons join together for a common goal and pool their funds to hire a lawyer to give them legal advice, how could it not be true that they each share with that lawyer an attorney-client privilege when she guides them as to legal issues that confront them as an association?" *Id.* at *2.

Further, applying the First Amendment to the U.S. Constitution, courts have blocked subpoenas like the one to the AAP which, if left intact, would result in revealing communications, and chilling future communications, reflecting "the essence of First Amendment freedoms — the freedom to protest policies to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest[,]" particularly given that "[t]he First Amendment's protection extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (cleaned up).

## III.    IA Overreaches on the AAP Subpoena in Additional Ways

IA argues about privilege only.  IA ignores that, in addition to privilege, the AAP objected on relevance, burden, and overall lack of proportionality, as well as IA improperly trying to obtain broader non-party discovery than party discovery.  Those issues remain.  At the appropriate juncture, if necessary, the AAP will argue those issues and file declarations to demonstrate the burdens presented and that the assorted privileges discussed above apply.  But any such motion would be meritless and a fruitless exercise, given the case law and relevant facts.[1]

---

[1] Further, contrary to IA's suggestions, AAP has no obligation right now to prepare a time-consuming and expensive privilege log where, as here, relevance is disputed.  *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).  *See also* 1991 Adv. Comm. Notes on Rule 45 (where a subpoena is "too broad" and presents "a burdensome task to

IA also overlooks proper venue. Consistent with Fed. R. Civ. P. 45(c)(2), and the subpoena itself, the place of compliance is Washington, D.C., where the AAP is headquartered. Thus, IA should have moved to compel there, not here. Fed. R. Civ. P. 45(f); *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 982, 984 (N.D. Cal. 2015).

### IV.    IA's Arguments for the Documents it Seeks from Plaintiffs are Meritless

While the documents sought are clearly privileged, IA's arguments as to its need also crumble on examination. First, as suggested above, a fair use analysis examines market harm by a review of business models and markets, among other evidence, not privileged communications. Second, to the extent copyright misuse even exists as a potential defense in the Second Circuit (a disputed proposition), IA did not plead it. Despite its inflammatory rhetoric, IA has not, nor could it, cite any factual basis for its unfounded suggestion. Speculation is not a factual predicate, let alone for a fishing expedition. Third, IA contends that its laches defense supports the discovery, but that is a non-starter given the U.S. Supreme Court's conclusion that laches is not a defense to a copyright claim filed within the statute of limitations, as here. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014).

Plaintiffs have already explained to IA why the withheld communications were made in a privileged context, including why any communications that included other AAP members involved entities with an identical legal interest to address IA's infringing activity. IA consistently "disagreed," based only on legal platitudes divorced from the facts. Plaintiffs reminded IA of this on October 28 and offered to confer, but IA did not respond. Instead, IA and EFF promptly filed and then uploaded the Letter to EFF's public website attached to a misleading blog on the case, further attempting to litigate this case and their desired policy gains in the press based on a false narrative rather than in the courtroom based on the facts and the law.

Finally, IA's Letter mischaracterizes Plaintiffs' positions. The documents on Plaintiffs' privilege log were not withheld because of "mere membership in a trade association" or because "some AAP staff members are attorneys." Plaintiffs produced the non-privileged communications between Plaintiffs and AAP. Counsel for Plaintiffs reviewed the documents collected from Plaintiffs and withheld only communications that were privileged as discussed above. The log confirms that the subject matter of the communications was legal in nature—not business advice.

In sum, rather than filing unnecessary motions, IA can confirm the foundation for Plaintiffs' assertions of privilege during depositions. Thank you for your consideration of these issues.

Respectfully submitted,

*/s/ Scott A. Zebrak*

Scott A. Zebrak

cc: Counsel of Record (via ECF)

---

provide full information regarding all that person's claims to privilege or work product protection[,]" the recipient "is entitled to protection . . . through an objection made pursuant to [Rule 45] paragraph [(d)](2)").