

**Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Elizabeth A. McNamara**
(212) 489-8230 tel
(212) 489-8340 fax

lizmcnamara@dwt.com

June 10, 2022

**VIA ECF**
Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *Hachette Book Group, Inc., et al. v. Internet Archive, et al.*, 20-cv-04160-JGK

Dear Judge Koeltl:

*The plaintiffs may proceed with a motion for summary judgment on the same schedule and with the same word counts that the Court has afforded the defendant, and with the same caution that the Court doubts the need for such lengthy papers.   So ordered.*
*[signature]*
*a SD. 5.*
*6/10/22*

We write on behalf of plaintiffs Hachette Book Group, Inc., HarperCollins Publishers LLC, John Wiley & Sons, Inc. and Penguin Random House LLC (the "Plaintiffs") to request a pre-motion summary judgment conference pursuant to Individual Practice 2(B).[1]  Plaintiffs are among the nation's leading book publishers who own the exclusive publishing rights to tens of thousands of books and exercise those rights on behalf of their authors, including by licensing ebook editions of their works to libraries.  Defendant Internet Archive scans millions of print books and distributes free verbatim digital copies of those books via public-facing websites accessible from anywhere on the planet, all without any authorization or payment to the rightsholders.  *See* https://openlibrary.org/; https://archive.org/details/inlibrary.  Defendant Internet Archive's unlawful free ebook website currently offers approximately three million bootleg ebooks of in-copyright titles, with approximately 25 million "borrows" a year.  The 127 Works in Suit are a tiny sample of the much wider universe of more than 33,000 of Plaintiffs' titles that are currently offered by the Internet Archive.  And, with just a few clicks, any Internet-connected user can download complete, free ebooks of these in-copyright works.

Internet Archive tries to wrap itself in the moniker of a "library" to whitewash its conduct, but the reality is that it runs a massive copyright infringement enterprise that goes beyond the most expansive definition of what libraries do.  Internet Archive is an industrial operation.  In 2019, it purchased the world's largest online used book seller – a massive for-profit business – to establish a "book pipeline" of millions of cheap paper books that are packed into shipping containers for transport to offshore "super-scanning" centers in the Philippines and China.  And far from providing a service that would not otherwise exist, Internet Archive merely imitates and competes with the authorized library ebook editions that Plaintiffs have offered for a decade and which are read by library patrons for free millions of times each year.

The right to publish books in electronic formats belongs to Plaintiffs (by way of their authors), not Internet Archive.  As the Second Circuit recognized in *Authors Guild v. Google*

---

[1] Plaintiffs respectfully request the same extension of word limits as was granted to Internet Archive for its summary judgment motion, specifically 12,000 words for the opening brief, 10,000 words for opposition and 6,000 words on reply.  *See* Dkt. 80.

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4876-5762-7684v.2 0092453-000002

Hon. John G. Koeltl
June 10, 2022
Page 2

*Books*, 804 F.3d 202, 225-26 (2d Cir. 2015) ("Google Books"), the creation of an ebook from a print book falls under the author's exclusive right to create derivative works. Moreover, print books and ebooks have very different characteristics – ebooks can be reproduced and distributed instantaneously and at minimal cost. Internet Archive has no right to take those benefits for itself without compensating the rightsholders. While Internet Archive claims in a recent letter to the Court to be "improving the efficiency of delivering content" – as if it is the only entity capable of delivering ebooks to library patrons – Plaintiffs have invested heavily to create now-thriving markets for library ebooks. More than 340 million authorized library ebooks were checked out in 2019. Analysis from two of the Publishers suggests that between 39-50% of ebook "reads" in this country are individuals reading free licensed library ebooks as opposed to purchasing their own ebook copies from e-retailers. This figure is even more striking given the fact that library ebook revenue makes up only 25% of the total from ebooks, which underscores the vast reach of the legitimate library ebook channels that Plaintiffs developed and are committed to maintaining.

Defendant defends its actions with a manufactured concept it calls "Controlled Digital Lending" – which essentially posits that Internet Archive can unilaterally create its own ebooks as long the number of people reading those ebooks does not exceed the number of physical books owned by Internet Archive and its partners. The concept has no basis in law. The material facts of this case are not in dispute, nor are the prima facie elements of Plaintiffs' copyright claims (*i.e.*, valid ownership of a copyright and infringement). The only issue is whether Internet Archive's massive infringement scheme is fair use under 17 U.S.C. § 107. All four factors weigh heavily in favor of granting Plaintiffs' motion for summary judgment.

The first factor – purpose and character of the use – powerfully favors Plaintiffs. Defendant's reproduction and distribution of verbatim copies of millions of entire ebooks for the same purpose as the original is the quintessential non-transformative use. *See, e.g., Google Books*, 804 F.3d at 225 (noting that a copyright infringement claim based on "converting … books into a digitized form and making that digitized version accessible to the public … would be strong"); *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018); *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (holding that copying "solely to convey the original text to the reader" is not transformative and supplants the original because a reader of the second work has little reason to buy a copy of the original."). The Second Circuit has made clear that "utility expanding" transformative uses are confined to examples such as scanning books to create a full-text searchable database "in a manner that did *not* allow users to read the texts." *Capitol Records v. ReDigi Inc.*, 910 F.3d 649, 661 (2d Cir. 2018) (emphasis added). The absence of a transformative use weighs heavily against fair use, as reflected in legions of cases.

Further, while the Internet Archive is nominally a non-profit, it is not an educational institution and Plaintiffs will demonstrate that it "stands to profit from exploitation of the copyrighted material without paying the customary price" (*Harper & Row v. Nation,* 471 U.S. 539, 562 (1986) – including by using its website to promote book sales for its related for-profit company Better World Books. Further, nonprofit status is not an excuse for book piracy. *See,*

Hon. John G. Koeltl
June 10, 2022
Page 3

*e.g., Penguin Grp. (USA) Inc. v. Am. Buddha,* 2015 WL 11170727, at *4 (D. Ariz. May 11, 2015).[2]

 The fourth factor also strongly favors Plaintiffs – especially since the lack of transformativeness tips the fourth factor against fair use. The fourth factor considers "the effect of the [copying] use upon the potential market for or value of the copyrighted work." *ReDigi,* 910 F.3d at 459-60. The burden is on Internet Archive to "bring forward favorable evidence about relevant markets," which it cannot do. *Dr. Seuss Enters., L.P. v. ComicMix LLC,* 983 F.3d 443, 460 (9th Cir. 2020). The fourth factor also "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell v. Acuff Rose Music,* 510 U.S. 569, 587 (1994).

 Here, Plaintiffs have suffered at least two forms of cognizable market harm as a result of Internet Archive's conduct. First, Internet Archive has failed to pay Plaintiffs the fees that are customarily paid by libraries to distribute ebooks in short-term distributions. Here, there is a "'traditional, reasonable, or likely to be developed' market for licensing ebooks to libraries. *Ringgold,* 126 F.3d at 81. Internet Archive proclaims itself to be a library and engages in similar-style short term distributions, but fails to pay the fee. Second, the Internet Archive's ebooks act as a substitute, capable of decreasing revenues from both consumers who would have otherwise purchased commercial ebooks and libraries that would have otherwise obtained authorized ebooks. Indeed, Internet Archive explicitly markets itself to libraries by telling them that controlled digital lending offers "a financially sustainable infrastructure for at-scale ebook circulation so US libraries that own a hardcopy can offer their patrons temporary digital access" without additional payment. *See* http://openlibraries.online/libraries/. That is exactly the problem. Rightholders are entitled to the proceeds from all formats of their works – all critical revenues that incentivize creation. Finally, the Internet Archive's argument that it serves the public interest is foreclosed by the Supreme Court's decision in *Harper & Row,* in which the court succinctly stated that, "[a]ny copyright infringer may claim to benefit the public by increasing public access to the copyrighted work." 471 U.S. at 569.

 For these reasons, the fair use factors unequivocally favor Plaintiffs and their forthcoming motion for summary judgment should be granted.[3]

---

[2] The second and third factors also weigh against fair use. The second factor focuses on the nature of the work infringed and the Works in Suit are all "creative" works -- indeed, many of the jewels of the nation's literature. 17 U.S.C. § 106(2). The third factor – *i.e.,* the amount and substantiality of the underling work that is used (*id.* at § 106(3)) – supports Plaintiffs because Internet Archive is distributing the entire ebooks. *Tveyes, Inc.,* 883 F.3d at 179.

[3] Plaintiffs also will argue that Defendant's conduct during its so-called "National Emergency Library" did not constitute fair use, a conclusion strongly supported by the Copyright Office. Letter from Maria Strong, Register of Copyrights, to Senator Tom Udall (May 15, 2020) available at https://www.copyright.gov/laws/hearings/Sen-Udall-Response-National-Emergency-Library.pdf.

Hon. John G. Koeltl
June 10, 2022
Page 4

        Respectfully submitted,

        Davis Wright Tremaine LLP

        /s/ Elizabeth A. McNamara

        Elizabeth A. McNamara

cc:    To all counsel of record (via ECF)