# McNamara Declaration
# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS LLC, JOHN WILEY & SONS, INC., and PENGUIN RANDOM HOUSE LLC, | Case No. 1:20-CV-04160-JGK |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| INTERNET ARCHIVE and DOES 1 through 5, inclusive, | |
| Defendants. | |

## DEFENDANT INTERNET ARCHIVE'S ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

Defendant Internet Archive, by its undersigned counsel, hereby answers the Complaint of Plaintiffs Hachette Book Group, Inc., HarperCollins Publishers LLC, John Wiley & Sons, Inc., and Penguin Random House LLC (collectively, "Plaintiffs") as follows, based on information reasonably available to the Internet Archive.

## PRELIMINARY STATEMENT

The Internet Archive, a 501(c)(3) public charity, is a nonprofit library that has had one guiding mission for almost 25 years: to provide universal access to all knowledge. It is a Library of Alexandria for the twenty-first century that, thanks to digital technologies and the Internet, excels in a way the Library of Alexandria never could. Through the Internet Archive, people who do not live in world capitals can access the same cultural and informational resources as those who do.

The Internet Archive does what libraries have always done: buy, collect, preserve, and share our common culture. In furtherance of that mission, the Internet Archive has received grant funding from the National Endowment for the Humanities, the National Science Foundation, and the federal government's Institute of Museum and Library Services, among many other sources. Many libraries and archives, including the Library of Congress, Boston Public Library, University of Illinois at Urbana-Champaign, and smaller community libraries like the Allen County Public Library trust the Internet Archive to digitize books and other materials in their collections in order to preserve physical texts and to facilitate public access. The Internet Archive is part of a network of libraries around the world—each of which is using digital technologies to meet the many challenges of serving patrons with diverse needs and differing abilities and to ensure that the growing storehouse of human creativity is not lost because no one has the capacity to preserve it.

Like Plaintiffs, the Internet Archive believes that "[b]ooks are a cornerstone of our culture and system of democratic self-government" and "play a critical role in education." Accordingly, democratizing access to information, and facilitating access to books in particular, has been a core part of the Internet Archive's mission for decades. But, for many people,

distance, time, cost, or disability pose daunting and sometimes insurmountable barriers to accessing physical books.  Digitizing and offering books online for borrowing unlocks them for communities with limited or no access, creating a lifeline to trusted information.  Readers in the Internet age need a comprehensive library that meets them where they are—an online space that welcomes everyone to use its resources, while respecting readers' privacy and dignity.

To make this vision of a comprehensive Internet library a reality, the Internet Archive offers digitized books in a variety of ways.  Books published prior to 1924 can be downloaded without restriction, and people with visual impairments can access more recent books using specially-designed encrypted technologies.  The corpus of digitized books is used by data scientists to do computational analysis of texts, yielding a broader picture of human thought.  To mirror traditional library lending online for everyone else, the Internet Archive allows patrons to borrow modern books via a process called Controlled Digital Lending ("CDL").

Under CDL, the Internet Archive and other libraries make and lend out digital scans of physical books in their collections.  Replicating longstanding brick-and-mortar practice, only one person can borrow one copy at a time.  With the support and participation of hundreds of other libraries, the Internet Archive has been digitizing books lawfully acquired through purchase or donation and, since 2011, lending those digitized books on this own-to-loan basis.  The Internet Archive loans books to its patrons using the same industry-standard technical protections that publishers themselves use to make books available electronically.  Libraries have collectively paid publishers billions of dollars for the books in their print collections and are investing enormous resources in digitization in order to preserve those texts.  CDL helps them take the next step by making sure the public can make full use of the books that libraries have bought.

This activity is fundamentally the same as traditional library lending and poses no new harm to authors or the publishing industry.  In fact, the Internet Archive fosters research and learning by making sure people all over the world can access books and by keeping books in circulation when their publishers have lost interest in providing access.  Nevertheless, where authors or publishers wish to deny the public access to their works through CDL, the Internet

Archive honors those requests. (All of the works at issue in this case have been removed from the Internet Archive's websites.)

The Internet Archive has made careful efforts to ensure its uses are lawful. The Internet Archive's CDL program is sheltered by the fair use doctrine, buttressed by traditional library protections. Specifically, the project serves the public interest in preservation, access and research—all classic fair use purposes. Every book in the collection has already been published and most are out of print. Patrons can borrow and read entire volumes, to be sure, but that is what it means to check a book out from a library. As for its effect on the market for the works in question, the books have already been bought and paid for by the libraries that own them. The public derives tremendous benefit from the program, and rights holders will gain nothing if the public is deprived of this resource.

During the early days of the COVID-19 crisis, in response to urgent pleas from teachers and librarians whose students and patrons had been ordered to stay at home, the Internet Archive decided to temporarily permit lending that could have exceeded the one-to-one owned-to-loaned ratio. With millions of print books locked away, digital lending was the only practical way to get books to those who needed them. The Internet Archive called this program the "National Emergency Library" and planned to discontinue it once the need had passed. Twelve weeks later, other options had emerged to fill the gap, and the Internet Archive was able to return to the traditional CDL approach.

Contrary to the publishers' accusations, the Internet Archive and the hundreds of libraries and archives that support it are not pirates or thieves. They are librarians, striving to serve their patrons online just as they have done for centuries in the brick-and-mortar world. Copyright law does not stand in the way of libraries' right to lend, and patrons' right to borrow, the books that libraries own.

## **NATURE OF THE ACTION**[1]

1.      The Internet Archive admits that the Plaintiffs allege copyright infringement, that Internet Archive is a named Defendant, and that the Complaint alleges facts concerning "Open Library" and/or "National Emergency Library."  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

2.      Denied.

3.      The Internet Archive admits that more than 1.3 million books are available on archive.org for one patron to borrow at a time.  The Internet Archive denies the remaining allegations of this paragraph.

4.      Admitted.

5.      The Internet Archive admits that, in 1787, the Framers adopted the Copyright Clause of the Constitution, explicitly authorizing Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const., Art. I, § 8, cl. 8.  The Internet Archive further admits that, in 1790, the First Congress enacted the first Copyright Act.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

6.      The Internet Archive admits that books from a variety of genres are available to patrons for borrowing on archive.org.  The Internet Archive denies the remaining allegations of this paragraph.

7.      Denied.

8.      Denied.

9.      Denied.

10.      Denied.

---

[1] Internet Archive neither admits nor denies the contents of the various headings and subheadings in the Complaint, which are reproduced herein solely for convenience.

11.     Denied.

12.     The Internet Archive admits that libraries are trusted institutions that serve communities.  The Internet Archive admits that a study authored by the Copyright Office titled "Legal Issues in Mass Digitization" published in October 2011 contains the statement "The Section 108 exception does not contemplate mass digitization."  The Internet Archive denies the remaining allegations of this paragraph.

13.     Denied.

14.     Denied.

## THE PARTIES

### A.     Plaintiffs

15.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

16.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

17.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

18.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

19.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

20.     The Internet Archive admits that the works identified in Exhibit A to the Complaint were at one time available for patrons to borrow via archive.org.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

21.     The Internet Archive lacks sufficient knowledge or information to admit or deny

the allegations in this paragraph and on that basis denies them.

22.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

**B.     Defendant**

23.     Admitted.

24.     The Internet Archive admits that it is registered with the New York Department of State to transact business and accept service of process in the State of New York. The Internet Archive further admits that some of its patrons live in New York. The Internet Archive further admits that some New York libraries have engaged the Internet Archive to digitize books for them. The Internet Archive further admits that some of its donors are located in New York. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

25.     The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations.

26.     The Internet Archive admits that it provides some services to other nonprofit institutions and that those institutions help defray the costs of providing those services. The Internet Archive admits that over the last 10 years, the Internet Archive has received donations, grants, and other revenue totaling more than $100 million. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

27.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

<u>**JURISDICTION AND VENUE**</u>

28.     The Internet Archive does not contest that this Court may exert subject matter jurisdiction over Plaintiffs' claims. The remaining allegations in this paragraph are legal

conclusions to which no response is required.  To the extent any response is required, the Internet Archive denies the allegations in this paragraph.

29.     For the purposes of this action only, the Internet Archive does not contest it is subject to personal jurisdiction in New York State.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

30.     For the purposes of this action only, the Internet Archive does not contest it is subject to personal jurisdiction in New York State.  The Internet Archive admits that it is registered to do business in New York State.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

31.     For this purposes of this action only, the Internet Archive admits that venue is proper in this District.

## FACTUAL BACKGROUND

**A.    The Book Publishing Ecosystem**

    **i.    Publishers and Authors Rely on Copyright Law to Create Functioning Markets for Books**

32.     The Internet Archive admits that books are a cornerstone of our culture and system of democratic self-government and play a critical role in education.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

33.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

34.     Internet Archive lacks sufficient knowledge or information to admit or deny the

allegations in this paragraph and on that basis denies them.

35.     The Internet Archive admits that the first Copyright Act was passed in 1790, that there is a Copyright Clause in the Constitution, and that a subsequent Copyright Act was passed in 1976.  The remaining allegations in this paragraph are legal conclusions to which no response is required.  To the extent any response is required, the Internet Archive denies the allegations in this paragraph.

36.     Denied.

37.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

38.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

## ii.     The Development of Functioning Markets for Ebooks

39.     The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

40.     The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

41.     The Internet Archive admits that publishers sell copies of print books without any restrictions.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

42.     The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

43.     The Internet Archive admits that Congress passed the DMCA in 1998.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

44.     The Internet Archive lacks sufficient knowledge or information to admit or deny

the remaining allegations in this paragraph and on that basis denies them.

45.     The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

### iii.     The Established Market Equilibrium Between Authors, Publishers, and Libraries

46.     The Internet Archive admits that public libraries are among the most cherished institutions in this country.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

47.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

48.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

### iv.     Plaintiffs and Libraries Reacted Rapidly to Ensure Library Patrons Have Access to Books During the COVID-19 Lockdown

49.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

50.     Denied.

51.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

### B.     Internet Archive Unlawfully Disrupts the Book Publishing Ecosystem by Infringing Copyright on an Industrial Scale

52.     Denied.

### i.     Internet Archive

53.     The Internet Archive admits that Brewster Kahle founded the Internet Archive in

1996.  The Internet Archive further admits that it provides the Wayback Machine and digitization of public domain materials.  The Internet Archive further admits that such services are excluded from Plaintiffs' allegations in this lawsuit.  The Internet Archive denies the remaining allegations of this paragraph.

54.  The Internet Archive admits that its headquarters are located in San Francisco, but denies that the corner of Funston and Clement Streets is an "exclusive area."  The Internet Archive further admits that, as listed on its 2017 tax filings, it employed 150 employees in calendar year 2017.  The Internet Archive admits that Better World Libraries is a nonprofit organization that owns book seller Better World Books.  The Internet Archive denies the remaining allegations of this paragraph.

55.  The Internet Archive admits that it has received grants from the Kahle/Austin Foundation.  The Internet Archive admits that the Kahle/Austin Foundation was established by Brewster Kahle and his wife.  The Internet Archive admits that its programs are funded by a variety of philanthropic entities.  The Internet Archive lacks sufficient knowledge or information to admit or deny any remaining allegations in this paragraph and on that basis denies them.

56.  The Internet Archive admits that income from offering services and from donations help defray costs the Internet Archive incurs.  The Internet Archive further admits that it provides book scanning and digitization to institutions nationwide.  The Internet Archive admits that the New York Public Library hosted the Internet Archive's digitization activities in New York at one time.  The Internet Archive denies the remaining allegations in this paragraph.

## ii.    The Open Library

57.  The Internet Archive admits that it started Open Library in 2006 with the goal of providing "one web page for every book published."  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

58.  Denied.

59.  Denied.

60.     Denied.

61.     The Internet Archive admits that an article titled *Where to find what's disappeared online, and a whole lot more: the Internet Archive* by Mary Kay Magistad is dated February 23, 2017.  The Internet Archive further admits that this article contains the following quote attributed to Brewster Kahle: "We're trying to build a Library of Alexandria, Version 2, so can we make all the published works of humankind available to people, permanently. If you're curious enough to want to have access, can we make it available to all the books, music, video, web pages, software, lectures, available to anybody wanting to have access."  The Internet Archive lacks sufficient knowledge or information to admit or deny any remaining allegations in this paragraph and on that basis denies them.

62.     The Internet Archive admits that an article titled *Internet Archive Expands Partnerships of Open Libraries Project* by Matt Enis is dated May 2, 2019.  The Internet Archive further admits that this article states that "The organization's goal is to ramp up digitization to 500,000 books per year," and the Internet Archive further admits that the article characterizes a component of that goal is "to have more than four million books online for the public."  The Internet Archive further admits that the article attributes the quote "to have more than four million books online for the public" to Chris Freeland, whom the article identifies as the director of Open Libraries.  The Internet Archive lacks sufficient knowledge or information to admit or deny any remaining allegations in this paragraph and on that basis denies them.

63.     Denied.

64.     The Internet Archive admits that *The Man Who Solved the Market: How Jim Simons Launched the Quant Revolution* by Gregory Zuckerman is listed in Exhibit A to the Complaint.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

65.     Denied.

66.     Denied.

### iii.     The User Experience of the Website

67.     The Internet Archive admits that a patron may sign up for an account using an Internet connection.  The Internet Archive further admits that, once a patron has created an account, the patron can borrow books.  The Internet Archive denies the remaining allegations of this paragraph.

68.     Admitted.

69.     The Internet Archive admits that clicking on a book title takes the patron to the title's webpage on the Open Library website, which contains a picture of the cover, a description of the book and bibliographic information, such as the publication date and the WorldCat catalog number.  The Internet Archive admits that the image in Paragraph 69 of the Complaint appears to be a screenshot of the Open Library page for the book *Blink*.  The Internet Archive admits that this screenshot contains links to book retailers.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

70.     The Internet Archive admits that in the screenshot in Paragraph 69 of the Complaint, the first link to a book retailer is to Better World Books.  The Internet Archive further admits that Better World Books is an online seller of books which is owned by Better World Libraries, a nonprofit organization.  The Internet Archive denies the remaining allegations of this paragraph.

71.     The Internet Archive admits that it labels some books on Open Library with the terms "read" and "borrow."  The Internet Archive further admits that patrons may "read" or "borrow" a book if that book is available on archive.org.  The Internet Archive further admits that patrons who choose books available to "read" can download the digitized book in a variety of digital formats, including as a .pdf file.  The Internet Archive further admits that there is no limit on the number of patrons that can download books available to "read" on archive.org.  The Internet Archive further admits that books available to "read" on archive.org lack DRM restrictions.  The Internet Archive further admits that patrons can access books available on

archive.org to "read" using the BookReader interface. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

72. The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations.

73. The Internet Archive admits that books available for patrons to borrow on archive.org are not known by the Internet Archive to be in the public domain. The Internet Archive denies the remaining allegations of this paragraph.

74. The Internet Archive admits that a patron is currently limited to borrowing ten books at a time, to the extent those ten books are available to borrow from archive.org. The Internet Archive further admits that some books are available to borrow from archive.org for two weeks. The Internet Archive further admits that when a patron has borrowed ten books that are available to borrow from archive.org, the patron must return one of these borrowed books before he or she may borrow another book that is available to borrow from archive.org. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations.

75. The Internet Archive admits that it enforces an "owned to loaned" ratio that restricts the number of patrons who can at the same time borrow a book that is available to borrow from archive.org. The Internet Archive further admits that its patrons are put on a waitlist when there are no available copies of a book to borrow from archive.org. The Internet Archive denies the remaining allegations in this paragraph.

76. The Internet Archive admits that patrons that have checked out a book can read it on the BookReader interface. The Internet Archive further admits that this interface operates in a

web browser. The Internet Archive further admits that the image in Paragraph 76 purports to be a screenshot of pages 166 and 167 of the book *Blink*, viewable on a web browser. The Internet Archive further admits that, in BookReader, patrons can turn pages by clicking on the pages or using left- and right-facing triangles at the bottom of the screen. The Internet Archive further admits that, in BookReader, patrons have the option to click a button to hear the text of a book read aloud. The remaining allegations in this paragraph state legal conclusions and therefore do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies any remaining allegations in this paragraph.

77.     The Internet Archive admits that Adobe Digital Editions ("ADE") facilitates patron access to a borrowed book. The Internet Archive further admits that ADE files are protected by DRM technology that restricts copying and allows patrons to access the file during the fourteen-day borrowing period, after which time the patron can no longer open or access the file. The Internet Archive denies the remaining allegations in this paragraph.

78.     The Internet Archive admits that patrons can borrow books available to "borrow" from archive.org in two ADE formats: "Encrypted Adobe PDF" and "Encrypted Adobe ePub." The Internet Archive admits that the image in Paragraph 78 purports to be a screenshot of a page from a book presented using ADE. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

79.     The Internet Archive admits that patrons can read books they borrow on capable devices and that examples of such devices include smartphones, tablets, and e-readers. The Internet Archive admits that patrons can access the BookReader interface on mobile devices. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

### iv.     The Open Library Is Not a Library, It Is an Unlicensed Aggregator and Pirate Site

80.     The Internet Archive admits that the website OpenLibrary.org states that Open

Library is "an accredited California State Library run by the non-profit the Internet Archive." The Internet Archive denies any remaining allegations in this paragraph.

81.     The Internet Archive admits that it received a Library Services and Technology Act ("LSTA") grant in 2010/2011.  The Internet Archive further admits that, in order to be eligible for such a grant, the Internet Archive must meet certain eligibility requirements.  The Internet Archive further admits that one of those eligibility requirements is that it be a library. The Internet Archive denies any remaining allegations in this paragraph.

82.     Denied.

83.     The Internet Archive admits that the image in Paragraph 83 of the Complaint appears to be a screenshot of part of the homepage of OpenLibrary.org.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

84.     The Internet Archive admits that the image in Paragraph 83 of the Complaint appears to be a screenshot of part of the homepage of OpenLibrary.org.  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

> **v.      IA's Industrial Book-Scanning Machine and Global Scanning Operations**

85.     Denied.

86.     The Internet Archive admits that it developed the Scribe System and invented the Scribe scanner in order to digitize printed materials.  The Internet Archive further admits that individuals operate the Scribe scanners to digitize printed materials and that the images in Paragraph 86 are of individuals using Scribe scanners to digitize printed materials.  The Internet Archive denies the remaining allegations of this paragraph.

87.     The Internet Archive admits that it has employed more than fifty employees to work at locations with Scribe scanners and that those employees are responsible for digitizing physical materials.  The Internet Archive further admits that volunteers have also digitized

materials.  The Internet Archive further admits that it can have 3,000 books digitized in a day when it is operating at full capacity.  The Internet Archive denies the remaining allegations in this paragraph.

88.     The Internet Archive admits that, in the past, it operated a digitization center housed at facilities provided by the New York Public Library in the Southern District of New York and that it digitized books there.  The Internet Archive further admits that some of the works listed in Exhibit A were digitized in New York.  The Internet Archive denies any remaining allegations in this paragraph.

89.     The Internet Archive admits that it digitizes materials using the Scribe scanner, which photographs each page of a physical book in order to make a digital version of the book. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations.  The Internet Archive denies the remaining allegations in this paragraph.

> **vi.     Internet Archive Shifts the Costs of Its Illegal Book Digitization Project Onto Publishers, Libraries, Open Library Users, and Other Third Parties**

90.     Denied.

91.     The Internet Archive admits that archive.org is an altruistic non-commercial enterprise.  The Internet Archive denies the remaining allegations of this paragraph.

> **a.     Internet Archive is Paid Millions of Dollars to Infringe Copyrighted Books and Put Them on the Open Library**

92.     The Internet Archive admits that archive.org is an altruistic non-commercial enterprise.  The Internet Archive denies the remaining allegations of this paragraph.

93.     The Internet Archive admits that the blog post by Brewster Kahle titled *Internet Archive Staff and Covid-19: Work-at-Home for Most, Full-Pay Furlough and Medical for Scanners* and dated March 25, 2020 contains the quote "Libraries paying for our scanning services is a major source of earned income for the Internet Archive."  Internet Archive denies the remaining allegations in this paragraph.

94.     The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.  The Internet Archive denies any remaining allegations in this paragraph.

> **b.     Better World Books Feeds the Open Library with Copyrighted Books**

95.     Denied.

96.     The Internet Archive admits that the quote "will allow Better World Books to provide a steady stream of books to be digitized by the Internet Archive, thereby growing its digital holdings to millions of books" appears in a press release accompanying the acquisition of Better World Books by Better World Libraries, a non-profit.  The Internet Archive denies that it is or is part of a "perfect closed loop system."  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

97.     Denied.

> **c.     Users "Sponsor" Books that Internet Archive Wants to Infringe**

98.     The Internet Archive admits that it gives patrons the option to "sponsor" books. The Internet Archive further admits that the image in Paragraph 98 appears to be a screenshot of the Open Library homepage.  The Internet Archive denies the remaining allegations in this paragraph.

99.     The Internet Archive admits that the image in Paragraph 99 appears to be a screenshot of a page for the book *Back to the Batcave*.  The Internet Archive further admits clicking on a "Sponsor" button on a book's page opens the sponsorship page for that book and that the sponsorship page for a book states that a "tax deductible donation can add this book to the Internet Archive's lending library, forever" and lists a cost to sponsor the book.  The Internet Archive denies any remaining allegations in this paragraph.

100.    The Internet Archive admits that the image in Paragraph 99 appears to be a

screenshot of a page for the book *Back to the Batcave*, written by Adam West. The Internet Archive further admits that the sponsorship cost of $93.12 appears in the image in Paragraph 99.To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies the remaining allegations in this paragraph.

101. Denied.

102. Denied.

### d.  Internet Archive Absorbs Entire Libraries for the Website

103. The Internet Archive admits that a May 2019 article quotes Chris Freeland as saying IA's acquisition program "involves collecting donations of in-copyright materials from libraries and booksellers, digitizing this content in [IA's] scanning center in Cebu, the Philippines, and then storing the physical copies in archive facilities in Richmond, CA." The Internet Archive further admits that Chris Freeland is director of Open Libraries. The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

104. The Internet Archive admits that physical books that have been digitized for the purposes of providing access to patrons through archive.org are stored in archive facilities in Richmond, California. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies the remaining allegations in this paragraph.

105. Denied. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations.

106. Denied.

### vii.  Controlled Digital Lending

107. The Internet Archive admits that Controlled Digital Lending is not copyright infringement. The Internet Archive denies any remaining allegations in this paragraph.

18

108.    The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.  The remaining allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, The Internet Archive denies the allegations.  The Internet Archive denies any remaining allegations in this paragraph.

109.    The Internet Archive admits that Jason Scott tweeted "Only one or two unique copies are kept – duplicates (which have increased over time) are donated to various charities or non-profits.  The books are stored at the physical archive."  The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

110.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, The Internet Archive denies the allegations.  The Internet Archive denies any remaining allegations in this paragraph.

111.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.  The Internet Archive denies the remaining allegations in this paragraph.

112.    IA admits that the Digital Millennium Copyright Act (DMCA) Section 104 Report issued by the Copyright Office states: "Time, space, effort and cost no longer act as barriers to the movement of [digital] copies, since digital copies can be transmitted nearly instantaneously anywhere in the world with minimal effort and negligible cost."  IA further admits that this report is available at https://www.copyright.gov/reports/studies/dmca/sec-104-report-vol-1.pdf.  IA lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, IA denies the allegations.

113.    Denied.

19

### viii. The National Emergency Library

114. The Internet Archive admits the National Emergency Library was announced on March 24, 2020. The Internet Archive further admits that the National Emergency Library was made available to the public in response to the pandemic. To the extent allegations in this paragraph state a legal conclusion they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies the remaining allegations in this paragraph.

115. The Internet Archive admits that a blog post written by Brewster Kahle dated April 7, 2020 states: "We moved in 'Internet Time' and the speed and swiftness of our solution surprised some and caught others off guard. In our rush to help we didn't engage with the creator community and the ecosystem in which their works are made and published." The Internet Archive lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

116. To the extent allegations in this paragraph state legal conclusions they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies any remaining allegations in this paragraph.

117. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies any remaining allegations in this paragraph.

118. To the extent allegations in this paragraph state legal conclusions, they do not require a response. To the extent a response is required, the Internet Archive denies the allegations. The Internet Archive denies the remaining allegations in this paragraph.

### C. Defendant's Infringement Causes Harm to Publishers

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123.    Denied.

124.    Denied.

125.    The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.

126.    Denied.

127.    Denied.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Direct Copyright Infringement (17 U.S.C. § 101 *et seq.*)

128.    The Internet Archive repeats and realleges each and every response to Plaintiffs' foregoing allegations.

129.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

130.    The Internet Archive lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and on that basis denies them.  To the extent allegations in this paragraph state legal conclusions, they do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

131.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

132.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

133.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

134.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

135.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

136.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

137.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

## SECOND CAUSE OF ACTION
### Secondary Copyright Infringement (17 U.S.C. § 101 *et seq.*)

138.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

139.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

140.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

141.     The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

142.     The allegations in this paragraph state legal conclusions and therefore do not

require a response.  To the extent a response is required, the Internet Archive denies the allegations.

143.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

144.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

145.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

146.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

147.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

148.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

149.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

150.    The allegations in this paragraph state legal conclusions and therefore do not require a response.  To the extent a response is required, the Internet Archive denies the allegations.

## PRAYER FOR RELIEF

In response to the Prayer for Relief, the Internet Archive denies that Plaintiffs are entitled to the requested relief, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

In further answer to the allegations made by Plaintiffs in the Complaint, the Internet Archive asserts the following affirmative defenses. The Internet Archive does not concede that it has the burden of proof on the defenses listed below.

### First Affirmative Defense
### (*Failure to State a Claim*)

The Complaint fails to state a claim on which relief can be granted.

### Second Affirmative Defense
### (*Fair Use*)

To the extent there was any use of Plaintiffs' copyrighted materials, such use is protected by the Fair Use Doctrine, including under 17 U.S.C. § 107.

### Third Affirmative Defense
### (*First Sale Doctrine*)

Plaintiffs' claims are barred in whole or in part by the First Sale Doctrine, including under 17 U.S.C. § 109.

### Fourth Affirmative Defense
### (*Safe Harbor*)

To the extent they arise by reason of the storage at the direction of a user of allegedly infringing material, Plaintiffs' claims are barred in whole or in part by 17 U.S.C. § 512(c).

### Fifth Affirmative Defense
### (*No Statutory Damages*)

Pursuant to 17 U.S.C. § 504(c)(2), Plaintiffs are not entitled to statutory damages, and statutory damages must be remitted, because the Internet Archive believed and had reasonable

grounds for believing that the accused use of the copyrighted work was a fair use, including

under section 107, and the Internet Archive is an institution, library, or archives accused of

having infringed by reproducing works in copies or phonorecords.

### Sixth Affirmative Defense
#### *(Statutes of Limitations)*

Plaintiffs' remedies are barred at least in part by the applicable statutes of limitations

under 17 U.S.C. § 507(b).

### Seventh Affirmative Defense
#### *(Laches)*

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### PRAYER FOR RELIEF

WHEREFORE, the Internet Archive respectfully prays that the Court:

1. Deny Plaintiffs' prayer for relief in it its entirety;

2. Dismiss the Complaint with prejudice and enter judgment in favor of IA;

3. Award the Internet Archive its attorneys' fees and costs incurred in this action, and any other amounts recoverable under law; and

4. Award the Internet Archive such other and further relief as the Court deems just and equitable.

The Internet Archive hereby demands a trial by jury in this action.

Dated:  July 28, 2020              DURIE TANGRI LLP


                         By: _____*/s/ Joseph C. Gratz*_____
                             JOSEPH C. GRATZ (*Pro Hac Vice*)
                             JESSICA E. LANIER (*Pro Hac Vice*)
                             ADITYA V. KAMDAR (*Pro Hac Vice*)

217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666
jgratz@durietangri.com
jlanier@durietangri.com
akamdar@durietangri.com

ALLYSON R. BENNETT (*Pro Hac Vice*)
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499
abennett@durietangri.com

CORYNNE MCSHERRY (*Pro Hac Vice*)
KIT WALSH (*Pro Hac Vice*)
CARA GAGLIANO  (*Pro Hac Vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
corynne@eff.org
kit@eff.org
cara@eff.org

Attorneys for Defendant INTERNET ARCHIVE

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

_/s/ Joseph C. Gratz_
JOSEPH C. GRATZ
