McNamara Declaration
Exhibit 27
part 3



CONFIDENTIAL

INTARC00142089



CONFIDENTIAL

INTARC00142090



**CHAPTER 1—SUBJECT MATTER AND SCOPE OF COPYRIGHT**

Sec.
101. Definitions.
102. Subject matter of copyright: In general.
103. Subject matter of copyright: Compilations and derivative works.
104. Subject matter of copyright: National origin.
104A. Copyright in restored works.
105. Subject matter of copyright: United States Government works.
106. Exclusive rights in copyrighted works.
106A. Rights of certain authors to attribution and integrity.
107. Limitations on exclusive rights: Fair use.
108. Limitations on exclusive rights: Reproduction by libraries and archives.
109. Limitations on exclusive rights: Effect of transfer of particular copy or phonorecord.
110. Limitations on exclusive rights: Exemption of certain performances and displays.
111. Limitations on exclusive rights: Secondary transmissions of broadcast programming by cable.
112. Limitations on exclusive rights: Ephemeral recordings.
113. Scope of exclusive rights in pictorial, graphic, and sculptural works.
114. Scope of exclusive rights in sound recordings.
115. Scope of exclusive rights in nondramatic musical works: Compulsory license for making and distributing phonorecords.
116. Negotiated licenses for public performances by means of coin-operated phonorecord players.
[116A. Renumbered.]
117. Limitations on exclusive rights: Computer programs.
118. Scope of exclusive rights: Use of certain works in connection with noncommercial broadcasting.
119. Limitations on exclusive rights: Secondary transmissions of distant television programming by satellite.
120. Scope of exclusive rights in architectural works.
121. Limitations on exclusive rights: Reproduction for blind or other people with disabilities.
122. Limitations on exclusive rights: Secondary transmissions of local television programming by satellite.

Definition of rights

Fair use!

Limitations & exceptions

INTARC00142091

# Statutory Copyright Exceptions

A *statutory exemption* allows individuals to exercise one of the exclusive rights of copyright

- without obtaining the permission of the copyright owner, and
- without the payment of any license fee

CONFIDENTIAL

INTARC00142092



# Exclusive Rights under ©

- to reproduce the work
- to prepare derivative works
- ***to distribute copies of the work\****
- to perform the work publicly
- to display the work publicly

INTARC00142093

# Language of Copyright Exceptions

17 USC §109 First Sale:



"**Notwithstanding the provisions of** section 106(3), the owner of a particular copy or phonorecord lawfully made under this title …is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy…"

CONFIDENTIAL

Courts have protected first sale and the secondary market

- 1908: Case about control of copyright eliminating the secondary market

- Supreme Court described this as "hateful to the law from Lord Coke's day to ours, **because it is _obnoxious to the public interest._**"



Prosecutor of Guy Folkes and the Gunpowder plot conspirators
Wrote the Insititutes of the Laws of England - foundational document of the common law

79

CONFIDENTIAL

INTARC00142095

# §107: Fair Use Doctrine

Preamble to fair use statute:



"**Notwithstanding the provisions of** sections 106…the fair use of a copyrighted work…for purposes such as **criticism, comment**, **news reporting**, **teaching, scholarship**, or **research**" is <u>not</u> an infringement of copyright."

CONFIDENTIAL

# Modern Transformative Fair Use

Four Factors of Fair Use:

(1) the purpose and character of the use;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

## Development of Transformative Fair Use

(1) Does the use **transform the material**, by using it for a **different purpose**?

(2) Was the **amount taken appropriate** to the new purpose?

# Fair Use Meets First Sale

The Legalities of Controlled Digital Lending

CONFIDENTIAL

INTARC00142098

# Controlled Digital Lending Elements

- Legitimately owned copy
- "Own to Loan Ratio"
- Digital Rights Management

CONFIDENTIAL
INTARC00142099

# Purpose and Character of Use

- Possibly transformative
- Not commercial
- Underlying purpose is the same as the exhaustion doctrine
- No additional copy is being used

CONFIDENTIAL
INTARC00142100

# Nature of & Amount Used of Work

- Largely neutral
- Context dependent

# Market Effect

- Library owns a legitimate copy of the book
- The digital copy substitutes for the owned copy
- Same damage as using its acquired item
  - Technology

CONFIDENTIAL



CONFIDENTIAL

INTARC00142103

## About controlled digital lending

- Legal considerations
  - Legal basis for use
  - Risk of litigation
  - Risk of losing a lawsuit
- How to assess these risks?
  - https://controlleddigitallending.org/
  - FAQ on Myths and Realities of CDL
  - White Paper on CDL: http://bit.ly/FUW2019Hansen

**INTARC00142104**

## Controlled Digital Lending is not new!

- Origins: *Michelle Wu, "Building a Collaborative Digital Collection: A Necessary Evolution in Libraries"*

- Internet Archive created the "**Open Library: Digital Lending Library**" CDL-like system – running for the past **8 years.**

CONFIDENTIAL                                                                    INTARC00142105

# Controlled Digital Lending in use….

- Now 16+ libraries have harnessed a CDL system to loan their digital copies of books.
  - Boston Public Library
  - Allen County Public Library (genealogical collection)
  - Georgetown Law Library
  - MIT Press (selected back catalog)
  - Houghton Mifflin Harcourt (entire back catalog)
  - And more….

90

## Other Controlled Digital Lendings?

- A new report from the British Library, commissioned by Arts Council England and the Carnegie UK Trust, has suggested a program called *Unified Digital Lending*

  - a single, publicly-run service devoted to the free digital 'lending' of books and other copyright content that would otherwise only be available on a commercial basis

CONFIDENTIAL

# For CDL, Libraries Should

(1) ensure that original works are acquired lawfully;

(2) apply CDL only to works that are owned and not licensed;

(3) limit the total number of copies in any format in circulation at any time to the number of physical copies the library lawfully owns (maintain an "owned to loaned" ratio);

(4) lend each digital version only to a single user at a time just as a physical copy would be loaned;

(5) limit the time period for each lend to one that is analogous to physical lending; and

(6) use digital rights management to prevent wholesale copying and redistribution.

CONFIDENTIAL



## <u>Capitol Records, LLC v. ReDigi Inc.</u>, 910 F.3d 649 (2d Cir. 2018)

- Easily distinguishable
  - Commercial
  - No control
  - No ownership

- Helpful provision
  - Transformative use



CONFIDENTIAL

INTARC00142111

CONFIDENTIAL

## shoe-leather advocacy

This summer, more than a dozen librarians and library advocates came to DC and spent the day talking to offices in the House and Senate, explaining how CDL benefits their constituencies.

CONFIDENTIAL
INTARC00142113



IA in DC

INTARC00142114

# IA in DC

Brewster and IA staff also flew in for in-person visits.

Later this month, there will be a closed (staff only) DC briefing on CDL and the availability of information online with IA, Wikimedia, Public Knowledge, and academics.



INTARC00142116

## why in-person advocacy, aka "lobbying" is important

Lobbying is not just schmoozing - it's a tool and you need a strategy.

Important for a variety of reasons - (intelligence gathering, feeding coalitions information, putting organization in position to be more effective in future, burnishing reputation, allows you to have more sophisticated tools in your advocacy toolkit).

In-person (or phone) meetings are more effective than email, letters, and petitions. Most of which no one really reads, sorry.

DC-based organizations and people like me do a lot, but we can't provide the context, the stories, or the first-hand credibility.

INTARC00142117

## making CDL matter to politicians

The key is to show how CDL benefits the kinds of things politicians care about, and that actually matter to their constituencies.

*Get people to do the right thing for their reasons, not your reasons.*

*(And show how your issue affects voters.)*

- Providing access to rural patrons who find it challenging to physically check out a book;
- Protecting materials from damage in natural disasters from fire to floods;
- Saving the cost of transporting books to other branches to be loaned;
- Allowing access to rare, fragile books or those out of print and not in circulation;
- Preserving vulnerable cultural heritage materials for indigenous people;
- Supplementing materials at K-12 and university libraries that are suffering budget cuts;
- Providing historical context and fighting misinformation online; and
- Increasing access for people with disabilities, the elderly and students in off hours.

CONFIDENTIAL

## it is fun and anyone can do it

You are there to talk about things that you know about. You are the expert. There's no reason to be nervous when you're in your comfort zone!

But make sure you:

*Are well prepared on substance and process (and realistic about what you don't know)*

*Are realistic about what you can achieve*

*Are respectful of others' time and opinions*

*Listen carefully*

*Willing to play the long game and build a relationship that may not have have tangible benefits immediately, but can yield successful results over the long term*

CONFIDENTIAL



Understanding the policies you want adopted/not adopted - being able to make the case for/against them

Understanding the process, calendar, logistics of policymaking. Inaction & delay is the default

Gathering, acting on, and dispensing intelligence - what are policymakers thinking, who are they talking to, what do they find persuasive, how do they make decisions

Know what you want to accomplish (or what you want to stop from being accomplished) - best case scenario

Know what is a realistic outcome that you would be willing to accept

Who your allies are - policymakers as well as civil society, industry, academics, etc. - and how to best deploy them

Who you're trying to influence - who are they, what they're likely to know, what do they care about, who do they listen to?

Who your champions are – who will go to the mat for your position, who will stand in front of the train? Key is to find them allies, bolster them

Understand the process and calendar & how it can work for or against you

INTARC00142120



- Say who you are, your organization
- Connection to district
- Don't be afraid of small talk
- Dress at the same level as the people you're meeting (depends on whether Congress is in session or not, usually)
- Brief overview of your issue
- What are you asking for?
- Tailor your message
- You want it two-way—don't do all the talking.
- Ask questions and take notes
- Be friendly and collegial
- Try to have a leave-behind.  But more is not better
- Send an email the next day saying thanks and attaching any extra promised materials

CONFIDENTIAL

Getting to "Open."

Heather Joseph
Executive Director, SPARC

CONFIDENTIAL

INTARC00142122



107

CONFIDENTIAL

INTARC00142123