# McNamara Declaration
# Exhibit 132

| | |
|---|---|
| **From:** | Courtney, Kyle K. |
| **Sent:** | Tuesday, September 19, 2017 11:35 AM EDT |
| **To:** | Lila Bailey |
| **CC:** | Wendy Hanamura |
| **Subject:** | RE: pre-interview for Library Leader panel and legal working sessions |

G'Morning –

I am copying and pasting the note from the back and forth with Kenny Crews.

But to start, Kenny pitched, and I adapted and made a "legal summary" of all of CDL – he thinks we are truly intertwining 107 and 109:

A library or archives is acting within fair use if it digitizes and lends to users the full text of a copyrighted book [work?], provided it does so within carefully implemented limits and safeguards (i.e., all the details of *CDL*), and provided that the library's primary purpose for making and using the digitized book [work?] is limited to uses that are within the distribution and other related rights that the library has under the first sale doctrine, as applicable to the original book [work?] in the collection.

I have been using this statement – in various forms, as I talked with Bob Darnton, John Palfrey, Jonathan Zittrain, and others. It seems to be a good elevator pitch for those that are "in the trenches" on copyright. This could be the beginning basis of our white paper down the road….

The rest below is Kenny, I sent him a reply on most, but wanted you to see all of the comments, especially the ones he mentions that could require edits.  He should be getting back to me again this week.
He is mostly positive about this! (Thankfully). A signature could be forthcoming… not sure.


This statement should have the effect of steering you away from separate analyses of the two legal doctrines.  Instead, you are integrating first sale as a part of fair use.  I am thinking that your "purpose" analysis can rise above the usual educational purpose statements, and add that a purpose is to exercise and fulfill the promise of first sale.

[BTW, I use the same analysis regarding 110(1).  If a prof wants to make copies of movie clips to show in class, the clips are made under fair use.  But in the analysis of the "purpose" factor, I argue in addition to education, that the purpose of the copying is to effectively utilize the performance right under 110(1).]

Some specific points in your draft:

** The statement needs to be stronger than offering a "good faith" interpretation.  That concedes you might be wrong.  At what point are you able to craft a CDL plan that you believe does in fact comport with the law?  Counsel will probably want a legal memo to the file, at the least.

** You limit the number of digital circulation copies to the number of print copies.  If the library owns three print copies, and three digital copies are out for circulation, what happens to the three in the stacks?  If they are still available for non-circulating use, one could argue that you have doubled the number of readable and useable copies.  Prepare for the counter-argument!

\*\* The technological measures to prevent misuse by users are critical to success of CDL.  Need to spell out the technology in detail and develop a demo.

\*\* You say fair use is rooted in the Constitution, but you don't explain.  Either give a convincing answer or leave out the reference.  It opens one more place where critics can attack.

\*\* Nature of the work:  I agree that selecting only certain types of books can strengthen this factor.  The quandary is that the more carefully your select books, the easier it is for someone to argue that you also could have carefully sought permission.  In fact, the first bullet point on the last page is about non-commercial books, etc.  Would the library have to search the market for each book?

\*\* Amount used:  There is a strong argument to make here for use of the entire book, based on Google Books, HathiTrust, and more.

\*\* Effect on the market:  The counter-argument is that the CDL use is NOT identical to current physical lending.  For example, lending the digital file does not raise risks of loss or damage to the copy.  It is does vanish, the library surely has a backup and does not need to return to the market and buy another copy.

\*\* The example of a negative book review also is not quite right.  A strongly negative review might never even include a quotation from the book.  In other words, the market harm from a negative review might not be cognizable under copyright law because the review never even touched any of the 106 rights of the owner.

\*\* The last bullet point on the last page is not very convincing.  Many rural communities are well served.  Sometime the biggest need is in the cities, where parking is miserable, and realistically students and profs are doing their research at home.

Sorry if I seem negative.  I am not!  I am just looking at the proposal through the eyes of someone on the "other side" so you can anticipate the issues.  I like this idea very much, and I would like to talk with you about tightening it.


**From:** Lila Bailey [mailto:@archive.org]
**Sent:** Tuesday, September 19, 2017 10:34 AM
**To:** Courtney, Kyle K. @harvard.edu>
**Cc:** Wendy Hanamura @archive.org>; Kinne, Sarah M @harvard.edu>
**Subject:** RE: pre-interview for Library Leader panel and legal working sessions

Thanks Kyle. Sarah, we look forward to hearing from you with some times that work.

In the meantime, Kyle, can you send me the notes from Kenny Crews on the Statement? I'm hoping to be able to lock down the language this week so we can share it with LLF attendees.

Thanks, and good luck with JZ and Chris. Fingers crossed.

On Sep 19, 2017 5:24 AM, "Courtney, Kyle K." <​@harvard.edu> wrote:

Good Morning –

Thanks for writing. At this stage of the semester I am teaching three sections, so it looks like I am booking on average almost a week out.

I am cc'ing Sarah, my office assistant and calendar wizard(!), to try and find a time that fits all our schedules.

Update: In the meanwhile I am so close on Jonathan Zittrain and Chris Bourg (MIT) – I think we will know if they sign this week...

Thanks,

Kyle

---

**From:** Lila Bailey [mailto:@archive.org]
**Sent:** Monday, September 18, 2017 3:14 PM
**To:** Courtney, Kyle K. @harvard.edu>; Wendy Hanamura <​@archive.org>
**Subject:** pre-interview for Library Leader panel and legal working sessions

Hi Kyle,

Wendy and I would like to set up a time to chat with you to discuss the myriad ways in which you are participating in LLF this year (thank you!). We'll talk about the plenary panel regarding the CDL Statement, as well as the other legal working group sessions.

Some options for times that work for the both of us are:

Tuesday 9/19 from 1-4pm Pacific

Wednesday 9/20 between 9-11am Pacific

Monday 9/25 between 11am and 1pm Pacific

Is there a time in there that works for you? Expect the call to run about an hour.

Thanks!

Lila

CONFIDENTIAL                                                                                                                                                   INTARC465700

CONFIDENTIAL

INTARC465701