# McNamara Declaration

# Exhibit 155

| | |
|---|---|
| From: | Brewster Kahle |
| Sent: | Thursday, September 27, 2018 7:30 PM EDT |
| To: | Hayden, Carla |
| BCC: | Lila Bailey |
| Subject: | upcoming documents on controlled digital lending |
| Attachments: | signature.asc |

Carla,

Hope all is well.   You may not remember, but we talked about lending digitized books, or "controlled digital lending" as a way to get 20th century books onto the net respectfully. Tomorrow there will be a whitepaper and position paper put out by copyright scholars (independent of the Internet Archive) on this subject.

If you would not mind not making this public, as it will be public tomorrow, I thought I would share the draft of the lawyer's post about it.   I am doing this so you would not be surprised.

We have found controlled digital lending to work well, as we have been doing it for 750,000 books for the last 7 years.
Maybe other libraries will now get on board if there is more clarity about how it works legally.

-brewster

**Controlled Digital Lending of Library Books**

*This post is co-authored by Dave Hansen (Duke University Libraries) and Kyle Courtney (Harvard Library)*

We're very pleased to announce the release of two documents that we believe have the potential to help greatly expand digital access to print library collections by helping libraries do online what we have always done in print: lend books.

Both are aimed at addressing the legal and policy rationales for what we term "controlled digital lending" -  a method by which libraries loan print books to digital patrons in a "lend like print" fashion similar to how non-digital patrons check out books in-person. Through CDL, libraries use technical controls to ensure a consistent "owned-to-loaned" ratio, meaning the library circulates the exact number of copies of a specific title it owns, regardless of format, putting controls in place to prevent users from redistributing or coping the digitized version.

CDL isn't itself a silver bullet for mass digital access to books. It's not meant to be a competitor to *Overdrive,* nor a replacement for licensing e-books of best-sellers or other currently licensable e-book content. But we think CDL does deserve significant attention as a legal strategy, particularly to help address access to the large number of books published in the "20th Century black hole" that have little hope of otherwise bring made available to readers online.

The first document is a *Position Statement on Controlled Digital Lending,* which is meant to help people understand the concept at a glance, give an opportunity for libraries and legal experts to communicate their support for CDL, and provide a centralizing statement around which libraries can build a

CONFIDENTIAL

INTARC00395593

community of practice. The *Statement* is signed by a number of leading libraries (some of which are currently employing CDL or actively exploring how to do so) and copyright experts.

The second document is *A White Paper on Controlled Digital Lending of Library Books*, which we co-authored. The *White Paper* delves much deeper into the legal and policy rationales for controlled digital lending, reviewing law, the fair use rationale for CDL, and practical risk and policy considerations for libraries that might consider implementing CDL for some parts of their collections. Our aim with the *White Paper* is to help libraries and their lawyers become more comfortable with the concept by more fully explaining the legal rationale as well as the situations in which the rationale is the strongest.

We, along with several colleagues, have posted more information at www.controlleddigitallending.org, which includes the *Statement* text.

The white paper can be found at:
David R. Hansen & Kyle K. Courtney, *A White Paper on Controlled Digital Lending of Library Books* (2018), https://doi.org/10.31228/osf.io/7fdyr.

INTARC00395594