# EXHIBIT EE

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF NEW YORK

3      ----------------------------------------------x

4      HACHETTE BOOK GROUP, INC.,

       HARPERCOLLINS PUBLISHERS LLC,

5      JOHN WILEY & SONS, INC., and

       PENGUIN RANDOM HOUSE LLC,

6

7                  Plaintiffs,

8      vs.                    Case No. 1:20-cv-04160-JGK

9

       INTERNET ARCHIVE and DOES 1

10     through 5, inclusive,

11

12                 Defendants.

13     ----------------------------------------------x

14

15         *HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY*

16

17       REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF

18                      JEFFREY PRINCE

19                   Thursday, June 9, 2022

20

21

22

23

24     Reported By: Lynne Ledanois, CSR 6811

25     Job No. 5255194

                                            Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE SOUTHERN DISTRICT OF NEW YORK

 3   ----------------------------------------------------x

 4   HACHETTE BOOK GROUP, INC.,

     HARPERCOLLINS PUBLISHERS LLC,

 5   JOHN WILEY & SONS, INC., and

     PENGUIN RANDOM HOUSE LLC,

 6

 7              Plaintiffs,

 8   vs.                    Case No. 1:20-cv-04160-JGK

 9

     INTERNET ARCHIVE and DOES 1

10   through 5, inclusive,

11

12              Defendants.

13   ----------------------------------------------------x

14

15          Videotaped deposition of JEFFREY PRINCE,

16   taken in Bloomington, Indiana, commencing at

17   10:04 a.m. Eastern, on Thursday, June 9, 2022 before

18   Lynne Ledanois, Certified Shorthand Reporter No.

19   6811

20

21

22

23

24

25   ///
```

                                            Page  2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                    REMOTE APPEARANCES

 2

 3    Counsel for the Plaintiffs:

 4                   DAVIS WRIGHT TREMAINE LLP

 5                   BY:  LINDA STEINMAN

 6                   Attorney at Law

 7                   4530 Wisconsin Avenue, NW

 8                   5th Floor

 9                   Washington, D.C. 20016

10                   lindasteinman@dwt.com

11

12    Counsel for the Defendant Internet Archive:

13                   DURIE TANGRI LLP

14                   BY: JOSEPH C. GRATZ

15                      JESSICA LANIER

16                   Attorneys at Law

17                   217 Leidesdorff Street

18                   San Francisco, California 94111

19                   jgratz@durietangri.com

20                   jlanier@durietangri.com

21

22

23

24    ALSO PRESENT:

25    David West, Videographer
```

Page 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. GRATZ:                                      11:20AM

 2         Q    You have that document before you in paper

 3    form, Dr. Prince?

 4         A    Yes, I do.

 5         Q    What is the difference between a market    11:20AM

 6    harm analysis and damages analysis?

 7         A    I haven't laid out the full details of that.

 8    But I guess at a high level, the damages analysis, as

 9    we discussed before, I'm looking at quantifying what

10    the damage was of different nature to an affected       11:20AM

11    party.

12              Here what I -- in the market harm

13    analysis, I'm talking about different ways in which

14    plaintiffs were harmed by Internet Archive's

15    actions.                                              11:21AM

16         Q    Did you attempt to quantify that harm?

17              MS. STEINMAN:   Objection.

18              THE WITNESS:   I did not put a figure on

19    it, no.

20    BY MR. GRATZ:                                         11:21AM

21         Q    Why not?

22         A    My understanding is that was not part of the

23    scope of my report or the burden of my report.

24         Q    Is that something that you would have been

25    able to do with the information that was available    11:21AM
```

Page 52

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    to you if that had been something that you                11:21AM

2    understood to be part of the scope of your report?

3              MS. STEINMAN:  Objection.

4              THE WITNESS:  I'm not sure.  I didn't

5    attempt to do that, so I'm not sure how that would        11:21AM

6    have gone if I had tried to do that.

7    BY MR. GRATZ:

8        Q    Is the reason that you did not attempt to

9    quantify the harm that you identified in your report

10   that you did not consider such quantification to be       11:22AM

11   within the scope of what you were being asked to do

12   in this matter?

13             MS. STEINMAN:  Objection.  Go ahead.

14             THE WITNESS:  Yes, I think that's a fair

15   way of putting it.  My understanding was that the         11:22AM

16   burden was on the other side to establish there was

17   not harm.

18             So on my end, what I was asked to do is to

19   discuss, amongst other things, what the different

20   natures of harm were and the reasoning why those          11:22AM

21   would be there.

22   BY MR. GRATZ:

23       Q    Does your report identify the size in

24   numbers of any of those harms?

25             MS. STEINMAN:  Objection, the document          11:23AM

Page 53

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    speaks for itself.                              11:23AM
 2              THE WITNESS:  Again, I don't recall
 3    putting forth a figure for any of the individual
 4    harms that I put out.  I think there's information
 5    that may provide relevant information towards that,  11:23AM
 6    but I don't believe I put forth a specific figure
 7    for any of them.
 8    BY MR. GRATZ:
 9         Q    Do you have any opinions about the size in
10    numbers of any of those harms?                  11:23AM
11              MS. STEINMAN:  Objection.
12              THE WITNESS:  I believe that -- again, I
13    didn't give specific numbers, but I've indicated in
14    various places in the report that there's reason to
15    believe that those numbers are not de minimis.  But  11:23AM
16    I don't give a specific figure.
17    BY MR. GRATZ:
18         Q    Do you have any other opinions about the
19    size of those harms other than the ones we've talked
20    about already?                                  11:24AM
21              MS. STEINMAN:  Objection.
22              THE WITNESS:  Again, I think in the report
23    it's indicating that there's reason to believe that
24    the harm that was already experienced was
25    non-trivial.  And then also as I lay out in the  11:24AM
```

Page 54

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    not teach because I was running the department and an    4:36PM

2    institute.

3            I will be stepping down from the institute

4    this summer and then I'll be stepping down as chair

5    next year.                                                4:36PM

6            And so my steady state is I would teach

7    three classes a year, but that's been disrupted

8    because of my administrative roles.

9        Q    Do you spend more time on your expert

10   witness work and consulting work or on your               4:36PM

11   teaching?

12       A    As I said, now anything I do would be more

13   than teaching because I'm not teaching right now.

14   That would not be the case when I'm back to a

15   three-course load.                                        4:36PM

16           The other major component of my job is

17   research, which actually takes up most of my time.

18       Q    That was going to be my next question.

19           About what percentage of your time do you

20   spend on your consulting work, including expert           4:36PM

21   witness testimony?

22       A    Somewhere in the neighborhood of 20 percent.

23       Q    In your work on your expert report, did

24   you attempt to numerically estimate the size of the

25   effect you believe Internet Archive's controlled         4:38PM

                                                     Page 202

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    digital lending had on publisher's revenues?                    4:38PM

2            MS. STEINMAN:   Objection, asked and

3    answered.

4            THE WITNESS:   I did not try to quantify

5    that, no.                                                        4:38PM

6    BY MR. GRATZ:

7        Q    Do you know whether that effect would be

8    positive or negative?

9        A    I laid out the economic reasoning that I

10   believe points to it being detrimental, having harm.            4:38PM

11       Q    But you don't know whether that economic

12   reasoning, in fact, played out in that way; right?

13           MS. STEINMAN:   Objection.

14           THE WITNESS:   I don't have the numerical

15   estimates on that.   I think it's -- whatever its               4:39PM

16   economic reasoning or general theoretical arguments,

17   to the extent that the premises are sensible and

18   credible, I believe that the conclusions then

19   reasonably follow.   And I believe those assumptions

20   were credible.                                                   4:39PM

21   BY MR. GRATZ:

22       Q    It is possible that upon examination of

23   the data through an econometric analysis, it would

24   turn out that the effect was either zero or positive

25   with respect to publishers' revenues?                           4:39PM

                                                        Page 203

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q    When you say "likely" here, are you making      5:36PM
 2   an empirical claim?
 3        A    I'm not putting a quantification on it.
 4   This is I believe what I would consider theoretical
 5   reasoning, that you're in -- in such a scenario, it's     5:37PM
 6   likely or probable that a library that sees less
 7   interest in its e-Books is going to be less inclined
 8   to purchase licenses for those e-Books.
 9        Q    In other words, where you say that this is
10   likely, your view is that that result is the one          5:37PM
11   that would be predicted by economic theory but you
12   don't have specific empirical knowledge of an actual
13   probability?
14             MS. STEINMAN:  Objection.
15             THE WITNESS:  I don't put forth an actual        5:37PM
16   probability.  I think what this is acknowledging is
17   it may not always be the case.
18             There might be instances where the demand
19   still would be similar, but under these
20   circumstances, it's reasonable to think that it's a       5:38PM
21   probable outcome that the demand would decline.
22   BY MR. GRATZ:
23        Q    In your last answer, you said, "it may not
24   always be the case," but it's also true that it may
25   not ever be the case; is that right?                      5:38PM
```

                                                    Page 230

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          I, LYNNE M. LEDANOIS, a Certified

2   Shorthand Reporter of the State of California, do

3   hereby certify:

4          That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that a record of the proceedings was made by me

7   using machine shorthand which was thereafter

8   transcribed under my direction; that the foregoing

9   transcript is a true record of the testimony given.

10          Further, that if the foregoing pertains to

11   the original transcript of a deposition in a Federal

12   Case, before completion of the proceedings, review

13   of the transcript [] was [X] wasn't requested.

14          I further certify I am neither financially

15   interested in the action nor a relative or employee

16   of any attorney or party to this action.

17          IN WITNESS WHEREOF, I have this date

18   subscribed my name.

19

20

21   Dated: June 13, 2022

22

23

24                    *Lynne Marie Ledanois*

                 LYNNE MARIE LEDANOIS

25                 CSR No. 6811

                                   Page 268