# EXHIBIT II

| 94TH CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>No. 94-1476 |
|---|---|---|

# COPYRIGHT LAW REVISION

SEPTEMBER 3, 1976.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. KASTENMEIER, from the Committee on the Judiciary, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS

[To accompany S. 22]

The Committee on the Judiciary, to whom was referred the bill (S. 22) for the general revision of the copright law, title 17 of the United States Code, and for other purposes, having considered the same, report favorably thereon with an amendment in the nature of a substitute and recommend that the bill as amended do pass.

The amendments are as follows:

Strike all after the enacting clause and insert in lieu thereof the following:

SEC. 101. Title 17 of the United States Code, entitled "Copyrights", is hereby amended in its entirety to read as follows:

### TITLE 17—COPYRIGHTS

| Chapter | Sec. |
|---|---|
| 1. Subject Matter and Scope of Copyright | 101 |
| 2. Copyright Ownership and Transfer | 201 |
| 3. Duration of Copyright | 301 |
| 4. Copyright Notice, Deposit, and Registration | 401 |
| 5. Copyright Infringement and Remedies | 501 |
| 6. Manufacturing Requirement and Importation | 601 |
| 7. Copyright Office | 701 |
| 8. Copyright Royalty Commission | 801 |

### Chapter 1.—SUBJECT MATTER AND SCOPE OF COPYRIGHT

Sec.
101. Definitions.
102. Subject matter of copyright : In general.
103. Subject matter of copyright : Compilations and derivative works.
104. Subject matter of copyright : National origin.
105. Subject matter of copyright : United States Government works.
106. Exclusive rights in copyrighted works.
107. Limitations on exclusive rights : Fair use.
108. Limitations on exclusive rights : Reproduction by libraries and archives.
109. Limitations on exclusive rights : Effect of transfer of particular copy or phonorecord.
110. Limitations on exclusive rights : Exemption of certain performances and displays.
111. Limitations on exclusive rights : Secondary transmissions.
112. Limitations on exclusive rights : Ephemeral recordings.

recipients are not gathered in a single place, and even if there is no proof that any of the potential recipients was operating his receiving apparatus at the time of the transmission. The same principles apply whenever the potential recipients of the transmission represent a limited segment of the public, such as the occupants of hotel rooms or the subscribers of a cable television service. Clause (2) of the definition of "publicly" is applicable "whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."

### SECTION 107. FAIR USE

*General background of the problem*

The judicial doctrine of fair use, one of the most important and well-established limitations on the exclusive right of copyright owners, would be given express statutory recognition for the first time in section 107. The claim that a defendant's acts constituted a fair use rather than an infringement has been raised as a defense in innumerable copyright actions over the years, and there is ample case law recognizing the existence of the doctrine and applying it. The examples enumerated at page 24 of the Register's 1961 Report, while by no means exhaustive, give some idea of the sort of activities the courts might regard as fair use under the circumstances: "quotation of excerpts in a review or criticism for purposes of illustration or comment; quotation of short passages in a scholarly or technical work, for illustration or clarification of the author's observations; use in a parody of some of the content of the work parodied; summary of an address or article, with brief quotations, in a news report; reproduction by a library of a portion of a work to replace part of a damaged copy; reproduction by a teacher or student of a small part of a work to illustrate a lesson; reproduction of a work in legislative or judicial proceedings or reports; incidental and fortuitous reproduction, in a newsreel or broadcast, of a work located in the scene of an event being reported."

Although the courts have considered and ruled upon the fair use doctrine over and over again, no real definition of the concept has ever emerged. Indeed, since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts. On the other hand, the courts have evolved a set of criteria which, though in no case definitive or determinative, provide some guage for balancing the equities. These criteria have been stated in various ways, but essentially they can all be reduced to the four standards which have been adopted in section 107: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

These criteria are relevant in determining whether the basic doctrine of fair use, as stated in the first sentence of section 107, applies in a particular case: "Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section,

in these situations the burden of proving willfulness rests on the copyright owner and that of proving innocent rests on the infringer, and that the court must make a finding of either willfulness or innocence in order to award the exceptional amounts.

The "innocent infringer" provision of section 504(c)(2) has been the subject of extensive discussion. The exception, which would allow reduction of minimum statutory damages to $100 where the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," is sufficient to protect against unwarranted liability in cases of occasional or isolated innocent infringement, and it offers adequate insulation to users, such as broadcasters and newspaper publishers, who are particularly vulnerable to this type of infringement suit. On the other hand, by establishing a realistic floor for liability, the provision preserves its intended deterrent effect; and it would not allow an infringer to escape simply because the plaintiff failed to disprove the defendant's claim of innocence.

In addition to the general "innocent infringer" provision clause (2) deals with the special situation of teachers, librarians, archivists, and public broadcasters, and the nonprofit institutions of which they are a part. Section 504(c)(2) provides that, where such a person or institution infringer copyrighted material in the honest belief that what they were doing constituted fair use, the court is precluded from awarding any statutory damages. It is intended that, in cases involving this provision, the burden of proof with respect to the defendant's good faith should rest on the plaintiff.

### SECTIONS 505 THROUGH 509. MISCELLANEOUS PROVISIONS ON INFRINGEMENT AND REMEDIES

The remaining sections of chapter 5 of the bill deal with costs and attorneys' fees, criminal offenses, the statute of limitations, notification of copyright actions, and remedies for alteration of programming by cable systems.

Under section 505 the awarding of costs and attorney's fees are left to the court's discretion, and the section also makes clear that neither costs nor attorney's fees can be awarded to or against "the United States or an officer thereof."

Four types of criminal offenses actionable under the bill are listed in section 506: willful infringement for profit, fraudulent use of a copyright notice, fraudulent removal of notice, and false representation in connection with a copyright application. The maximum fine on conviction has been increased to $10,000 and, in conformity with the general pattern of the Criminal Code (18 U.S.C.), no minimum fines have been provided. In addition to or instead of a fine, conviction for criminal infringement under section 506(a) can carry with it a sentence of imprisonment of up to one year. Section 506(b) deals with seizure, forfeiture, and destruction of material involved in cases of criminal infringement.

Section 506(a) contains a special provision applying to any person who infringes willfully and for purposes of commercial advantage the copyright in a sound recording or a motion picture. For the first such offense a person shall be fined not more than $25,000 or imprisoned for not more than one year, or both. For any subsequent offense a person shall be fined not more than $50,000 or imprisoned not more than two years, or both.