# EXHIBIT 6

# Position Statement on Controlled Digital Lending by Libraries

## Last Updated: September 2018



Co-Authored By:

**Lila Bailey**, Policy Counsel, Internet Archive

**Kyle K. Courtney**, Copyright Advisor, Harvard University Library

**David Hansen**, Associate University Librarian for Research, Collections & Scholarly Communications, Duke University Libraries

**Mary Minow**, Fellow 2017-18, Berkman Klein Center for Internet and Society, Harvard University

**Jason Schultz**, Professor of Clinical Law, NYU Law

**Michelle Wu**, Associate Dean for Library Services, Professor of Law, Georgetown Law

*These institutional affiliations are for identification purposes only.*

## Position Statement on Controlled Digital Lending by Libraries

1

### Introduction

This Position Statement on Controlled Digital Lending by Libraries (hereafter "Statement") offers a good faith interpretation of U.S. copyright law for American libraries considering how to perform traditional lending functions using digital technology while preserving an appropriate balance between the public benefit of such lending and the protected interests of private rights holders. This Statement only applies to in-copyright works, as public domain works may be distributed without restriction. This Statement is not intended to describe the upper limits of the fair use or other rights of libraries, bind the signatories to any legal position, or constitute legal advice. **Because the following analysis is general, any library considering implementing controlled digital lending should consult a competent attorney to develop an appropriate program responsive to the specific needs of the institution and community.**

### Controlled Digital Lending ("CDL")

One of the most fundamental and socially beneficial functions of libraries is providing broad access to information by lending books and other materials to their communities. To lend materials more effectively, libraries can apply CDL to their collections in order to fulfill their missions. CDL techniques like those described in this Statement are designed to mirror traditional library practices permitted by copyright law.

Properly implemented, CDL enables a library to circulate a digitized title in place of a physical one in a controlled manner. Under this approach, a library may only loan simultaneously the number of copies that it has legitimately acquired, usually through purchase or donation. For example, if a library owns three copies of a title and digitizes one copy, it may use CDL to circulate one digital copy and two print, or three digital copies, or two digital copies and one print; in all cases, it could only circulate the same number of copies that it owned before digitization. Essentially, CDL must maintain an "owned to loaned" ratio. Circulation in any format is controlled so that only one user can use any given copy at a time, for a limited time. Further, CDL systems generally employ appropriate technical measures to prevent users from retaining a permanent copy or distributing additional copies.

### Legal Support For CDL

As U.S. libraries consider implementing CDL, questions may arise about how such programs interact with U.S. copyright law. As with traditional physical lending, there are two main areas of copyright law that support CDL: the principle of exhaustion and the fair use doctrine.

### First Sale and the Common Law Exhaustion Principle

Traditional library lending has been common practice for hundreds of years, primarily due to the common law principle of exhaustion, which is codified in part at Section 109 of the Copyright Act and is also known as the "first sale" doctrine. This legal set of rules mandates that any time there is an authorized transfer of a copy of a copyrighted work, the rights holder's power to control the use and distribution of that copy is terminated or "exhausted." Exhaustion allows the owner of a particular copy of a work to sell, lend, or give away that copy without payment to or permission from the rights holder. Among other important benefits, exhaustion ensures that after copyright holders price and control the initial distribution of their works, secondary outlets (such as libraries) and markets (such as used bookstores) can expand the affordability, preservation, and availability of works. Library CDL approaches that track the principle of exhaustion are thus much more likely to fall within its protections.

### Fair Use

Fair use has also existed for over a hundred years within U.S. copyright law to protect and preserve socially beneficial secondary uses of copyrighted works. It is an essential part of U.S. copyright law and acts as a First Amendment "safety valve" that protects free speech from encroachment by copyright holders. Section 107 of the U.S. Copyright Act gives several examples of canonical fair use such as "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research," and expressly states that fair use is not an infringement of copyright. Other socially beneficial purposes, such as increasing public access to works, may also qualify for fair use. Library CDL approaches that are designed for socially beneficial purposes are much more likely to fall within the protections of fair use.

The law further provides four nonexclusive factors for courts to consider in determining whether a particular use is fair:
>(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>(2) the nature of the copyrighted work;
>(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>(4) the effect of the use upon the potential market for or value of the copyrighted work.

All four factors must be weighed together in a fact-specific inquiry—each case is decided individually. Courts may consider additional factors, when appropriate, including whether the purpose of the use supports the underlying purpose of copyright law to expand public knowledge and understanding.

### Application of Fair Use and Exhaustion to CDL

Both the exhaustion doctrine and the fair use doctrine support CDL when properly implemented. Because there is no directly analogous case on point, this Statement offers a more detailed explanation of how fair use and copyright exhaustion can work together to effectuate CDL practices:

**Position Statement on Controlled Digital Lending by Libraries**

2

#### 1. The Purpose and Character of the Use

The purposes of library lending are diverse but all focus on socially beneficial outcomes that favor fair use, including providing access to information in order to encourage literacy, education, criticism, comment, news reporting, teaching, scholarship, and research, creating the informed citizenry essential to a functioning democracy. Both physical lending and CDL facilitate these purposes, and CDL substantially enhances them by providing non-discriminatory access and informational self sufficiency to residents in rural communities, the elderly or physically disabled, and others for whom a trip to their local library may be a barrier to access. During natural disasters and severe weather, as well as during health emergencies, CDL may be the only practical way for citizens to access what their libraries have purchased for their use. Moreover, another purpose of CDL is to fulfill the promise of the exhaustion doctrine, enabling libraries to distribute the copies they own, just in a different format, and this also weighs in favor of fair use. Public, school, and academic libraries lend books for noncommercial purposes, also strongly weighing in favor of fair use.

Another consideration under this factor is whether the use is transformative—that is, whether the secondary use has a different purpose or character from the original. A finding of transformativeness weighs heavily in favor of fair use, but a finding of transformation is not necessary when other socially beneficial purposes are present. This Statement is not premised on CDL being transformative. On balance, the noncommercial and socially beneficial purposes of CDL favor fair use.

#### 2. The Nature of the Copyrighted Work

Under this factor, published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred. CDL will almost always be used for books that have been published, and therefore this factor will generally favor fair use, or at least will not tip against it.

In some fair use cases, the content of the work (e.g., fact vs. fiction) will influence the fair use outcome, with courts allowing more uses when the underlying work is more informational or factual. Although this factor is rarely dispositive, library choices regarding which types of books they lend through CDL can help strengthen the analysis of this factor when weighed together with the other factors. Thus, the case for fair use may be stronger when the underlying work is academic, informational, or nonfiction. Other considerations regarding the nature of the work may also be considered relevant, for example, the case for fair use may be even stronger when the underlying work is commercially inactive, out-of-print, or a so-called "orphan work" whose owner cannot be identified or located.

#### 3. The Amount and Substantiality of the Portion Used

The amount used must be reasonable in light of the purpose of the use and many courts have found use of entire works fair for many purposes. With CDL, a user is typically granted temporary access to the entire work for noncommercial, socially beneficial purposes. After the temporary lending period, the user may no longer access the book, unless she checks it out again. If the library only owns one physical copy of the work, then additional users must wait in line. Just as it is reasonable and customary for brick-and-mortar libraries to lend out entire physical copies of books for a short period, providing temporary access to an entire digital work is reasonable for CDL purposes.

#### 4. The Market Effect

The final fair use factor looks at the market effect of the secondary use. For CDL, the arguable negative impact is the loss of sales due to lending as a substitution. However, this effect, to the degree it exists, is unlikely to be counted against fair use, because properly implemented CDL programs maintain an "owned to loaned" ratio that it is comparable to physical lending. Because libraries are entitled to distribute copies they own, any market effect from such activities is unlikely to impact the fair use analysis. Fair use jurisprudence recognizes a long-established principle that not all market harms are cognizable copyright injuries. The classic example is the market harm from a negative book review—although sales may be lost, this does not "count" as harm under the fourth factor. Moreover, because CDL depends on all copies having been legitimately acquired, the rights holder will have been compensated for all CDL copies at the time of first acquisition.

### Scope of CDL

Taken together, properly implemented CDL programs stand the best chance of having all the four fair use factors weigh in their favor.

In order to properly position CDL within the analysis above, libraries should (1) ensure that original works are acquired lawfully; (2) apply CDL only to works that are owned and not licensed; (3) limit the total number of copies in any format in circulation at any time to the number of physical copies the library lawfully owns (maintain an "owned to loaned" ratio); (4) lend each digital version only to a single user at a time just as a physical copy would be loaned; (5) limit the time period for each lend to one that is analogous to physical lending; and (6) use digital rights management to prevent copying and redistribution.

The scenarios below are examples of practices that would **not** be considered properly implemented CDL or qualify for the analysis outlined above:
• A library digitizes an in-copyright book and makes it publicly available without any DRM allowing users to proliferate available copies of the work.
• A library owning one print copy of an in-copyright book digitizes it and makes it available to multiple users simultaneously, with or without DRM.
• A library digitizes an in-copyright book it has borrowed through interlibrary loan and makes it available to its users, even if only to one user at a time, and controlled through DRM.
• A commercial entity implements CDL and lends digitized versions of books it has purchased to customers for a fee or supported by advertising, even if only to one user at a time, and controlled through DRM.

## Position Statement on Controlled Digital Lending by Libraries

3

### Signatories

**Institutional:**

Authors Alliance
Boston Public Library
Califa Group
California Digital Library
Digital Public Library of America
Duke University Libraries
EveryLibrary

Internet Archive
Internet Archive Canada
ISKME
Los Angeles Public Library
LSU Libraries
Multnomah County Library
NCSU Libraries
Phillips Academy, Andover,
Oliver Wendell Holmes Library

Sacramento Public Library
UNC Chapel Hill Libraries
University of Kansas Libraries
University of Massachusetts, Amherst, University Libraries
UC Berkeley Library
UC Davis Library
UC San Francisco Library

**Individual:**

**Beth Adelman**
Director of Charles B. Sears Law Library and Vice Dean for Legal Information Services
University at Buffalo School of Law

**Jonathan Askin**
Professor of Clinical Law
Brooklyn Law School

**Melissa J. Bernstein**
Library Director and Professor of Law
James E. Faust Law Library,
S.J. Quinney College of Law University of Utah

**Chris Bourg**
Director of Libraries
Massachusetts Institute of Technology

**Jessie Wallace Burchfield**
Associate Dean for Information and Technology Services, Law Library Director and Associate Professor of Law
Bowen School of Law Library
University of Arkansas at Little Rock

**Robert Darnton**
Carl H. Pforzheimer University Professor, Emeritus and University Librarian, Emeritus
Harvard University

**Elizabeth Townsend Gard**
Jill. H and Avram A. Glazer Professor in Social Entrepreneurship, Co-Director, Tulane Center for IP, Media & Culture
Tulane University Law School

**Peggy Hoon**
Director of Copyright Policy and Education
Louisiana State University

**Faye E. Jones**
Director and Clinical Professor of Law
Albert E. Jenner Memorial Law Library University of Illinois At Urbana-Champaign College of Law

**Ariel Katz**
Associate Professor, Innovation Chair in Electronic Commerce Faculty of Law
University of Toronto

**Jocelyn Kennedy**
Executive Director
Harvard Law School Library

**Yvette Joy Liebesman**
Professor of Law
Saint Louis University School of Law

**Lydia Pallas Loren**
Henry J. Casey Professor of Law
Lewis & Clark Law School

**Michael J. Madison**
Professor of Law
University of Pittsburgh School of Law

**Susan Nevelow Mart**
Associate Professor and Director of the Law Library
Colorado Law, University of Colorado - Boulder

**Teresa Miguel-Stearns**
Law Librarian and Professor of Law
Yale Law School

**Lateef Mtima**
Professor of Law and Director, Institute for Intellectual Property and Social Justice
Howard University School of Law

**Aaron Perzanowski**
Professor of Law
Case Western Reserve University School of Law

**Blake E. Reid**
Assistant Clinical Professor
Colorado Law

**Jorge R. Roig**
Associate Professor of Law
Charleston School of Law

**Pamela Samuelson**
Richard M. Sherman Distinguished Professor of Law and Information
University of California - Berkeley

**Courtney Selby**
Associate Dean for Information Services, Director of the Law Library and Professor of Law
Maurice A. Deane School of Law at Hofstra University Law Library

**Chris Shaffer**
University Librarian
University of California, San Francisco

**Jessica Silbey**
Professor of Law
Northeastern University School of Law

**Ronald E. Wheeler**
Director of Fineman & Pappas Law Libraries, Associate Professor of Law and Legal Research
Boston University Law

**Beth Williams**
Senior Lecturer in Law, Director Robert Crown Law Library
Stanford Law School

**Amanda Watson**
Director of the O'Quinn Law Library and Assistant Professor of Law
University of Houston Law Center

**Michael Wolfe**
Intellectual Property Fellow
Duke Law Center for the Study of the Public Domain

**Matthew Sag**
Professor of Law
Loyola University Chicago School of Law

**Julie E. Cohen**
Mark Claster Mamolen
Professor of Law and Technology
Georgetown Law

**Steven Mandeville-Gamble**
University Librarian
University of California, Riverside

**Paul Heald**
Richard W. and Marie L. Corman Professor of Law
University of Illinois at Urbana-Champaign College of Law

**Jeff MacKie-Mason**
University Librarian, Chief Digital Scholarship Officer, Professor, School of Information and Professor of Economics
University of California, Berkeley

**Lea Shaver**
Professor of Law and Dean's Fellow
Indiana University Robert H. McKinney School of Law

**Simon Canick**
Associate Dean for Law Library and Technology and Law School Professor
University of Maryland, Francis King Carey School of Law

**Jennifer M. Urban**
Clinical Professor of Law
University of California, Berkeley

For an updated list of signatories or to sign the Position Statement, go to www.controlleddigitallending.org.