IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HACHETTE BOOK GROUP, INC., HARPERCOLLINS PUBLISHERS LLC, JOHN WILEY & SONS, INC., and PENGUIN RANDOM HOUSE LLC<br><br>Plaintiffs,<br><br>v.<br><br>INTERNET ARCHIVE and DOES 1 through 5, inclusive<br><br>Defendants. | Case No. 1:20-CV-04160-JGK |

**PLAINTIFFS' OPPOSITION TO REQUESTS OF MICHELLE WU, LIBRARY FUTURES, THE AUTHORS ALLIANCE, AND JASON SCHULTZ FOR LEAVE TO APPEAR AS AMICI CURIAE[1]**

Plaintiffs Hachette Book Group, Inc. ("Hachette"), HarperCollins Publishers LLC ("HarperCollins"), John Wiley & Sons, Inc. ("Wiley") and Penguin Random House LLC ("PRH") (collectively, the "Plaintiffs" or "Publishers") respectfully submit this opposition to the motions of Michelle Wu (ECF No. 119), Library Futures (ECF No. 122), the Authors' Alliance (ECF No. 125), and Jason Schultz (ECF No. 129) (collectively, the "IA *amici*") for leave to file briefs as *amici curiae*.[2]

"The role of an *amicus curiae* is to provide the Court with neutral assistance in analyzing

---

[1] Plaintiffs previously filed a redacted version of this Opposition on the public docket. Defendant has since agreed to remove its confidentiality designations regarding the redacted material, and therefore Plaintiffs hereby refile the Opposition without redactions.

[2] Plaintiffs acknowledge that the Court granted the applications of some of the IA *amici* concurrently with the filing of this Opposition.

the issues before it." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.*, 607 F. Supp. 1312, 1327 (S.D.N.Y. 1985). Courts have broad discretion to permit or deny requests to appear as an *amicus*, and there is no standard for determining when a district court may consider an *amicus* filing. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011). However, the court should deny such requests where the partiality of the proposed *amicus* is such that it serves as "an advocate for one side" rather than as a "friend of the court." *New York SMSA Ltd. P'ship v. Town of Bedford*, 2022 WL 718641, at *4 (S.D.N.Y. Mar. 10, 2022) (citations omitted). In addition, a request to appear as an *amicus* should be denied unless (1) the parties' interests are not adequately represented by counsel, (2) the *amicus* has an interest in another case that may be affected by the decision in the present case, or (3) the *amicus* has a point of view not available to the court from the parties in the action. *Auto. Club*, 2011 WL 5865296 at *2.

The IA *amici* are not proverbial "friends of the court" aiming to provide neutral assistance in its decision-making but rather are, in the words of Internet Archive's own counsel, "friends of the Internet Archive" – precisely the types of parties whose submissions courts have historically rejected. *See New York SMSA*, 2022 WL 718641, at *4 (denying request for leave to file an *amicus* brief where proposed *amicus* was "more a friend of the Defendants than a friend of the court") (citation, internal quotation marks, and brackets omitted). The briefs they seek to submit do not present any point of view that is not available to the court from the parties, and are not necessitated by the inadequate representation of any party to the litigation. To the contrary, the proposed submissions are little more than extensions of Internet Archive's already-voluminous summary judgment papers, and represent an improper attempt to bloat the docket with its allies' voices. The Court should deny each of the IA *amici*'s requests.

2

**ARGUMENT**

**I.     The IA *Amici* Are Merely Advocates for the Internet Archive**

When deciding whether to permit submission of an *amicus* brief, the court should consider the partiality of the proposed *amicus*. *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011). Because *amici curiae* "serv[e] for the benefit of the court," they should be "objective, neutral, dispassionate 'friend[s]' of the court'" rather than advocates for one side. *United States v. Gotti*, 755 F. Supp. 1157, 1158-59 (E.D.N.Y. 1991); *see also S.E.C. v. Bear Stearns & Co.*, 2003 WL 22000340, at *6 (S.D.N.Y. Aug. 25, 2003) (*amici* should "seek[] to assist the Court in clarifying the issues as an objective, neutral, dispassionate 'friend' of the court'") (citation and internal quotation marks omitted). Thus, "while there is no requirement that *amici* be totally disinterested," (*Picard*, 797 F. Supp. 2d at 452), "there are, or at least there should be, limits" to the partisanship permissible in an *amicus curiae*. *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). As a result, courts regularly deny requests to file *amicus* briefs where the partisan interests of the proposed *amicus* are too pronounced. *See*, *e.g.*, *New York SMSA*, 2022 WL 718641 at *4 ("[C]onferring *amicus* status on such partisan interests is inappropriate.") (quoting *Bear Stearns*, 2003 WL 22000340 at *6); *Picard*, 797 F. Supp. 2d at 452; *Gotti*, 755 F. Supp. at 1158-59.

The IA *amici* far surpass the limits of acceptable partisanship for *amici curiae*. Internet Archive's own counsel Lila Bailey referred to three of the authors of the *amicus* briefs as "friends of the Internet Archive." SUMF ¶418.[3] And indeed, each of these IA *amici* is a barely-disguised

---

[3] The Publishers do not object generally to the filing of *amicus* briefs in this action, even though the record is already considerable with the parties' papers. Thus, the Publishers did not object to the filing of an *amicus* brief by Rebecca

3

surrogate of Internet Archive with whom it collaborated extensively on manufacturing the very legal theories and policies at issue in this litigation:

- **Michelle Wu**: Internet Archive retained Wu as its counsel from 2016 until at least March 2018, and according to Internet Archive's privilege log she advised on the very issue before this Court, "CDL legal strategy" and "intellectual property legal strategy." *See also* SUMF ¶¶416, 435.[4] In addition, Wu collaborated closely with Internet Archive in every step of the development of the theory of controlled digital lending (or "CDL") on which Internet Archive relies in this litigation as the primary defense for its actions. Along with Bailey, and the other IA *amici* David Hansen, Kyle Courtney, and Jason Schultz (among others), Wu participated in the workshop Internet Archive helped organize in connection with its efforts to develop a legal rationale for its infringements (the "Workshop") (SUMF ¶412),

---

Tushnet, a professor at Harvard Law School, or by the "information scholars and historians" Kevin L. Smith and Kenneth Crews. These parties' relative independence to Internet Archive is in stark contrast to the proposed *amici* at issue on this motion. Should the Court grant the requests of any *amici* to appear, *amici* may also seek to appear in support of Plaintiffs. Such requests would not be barred by the timing set out in Federal Rule of Appellate Procedure 29(a)(6) requiring *amicus* briefs to be filed within 7 days of the principal brief of the party it is supporting, as district courts regularly grant requests to appear as *amicus* filed outside of the 7-day timeframe. *See*, *e.g.*, *R.F.M. et al. v. Nielsen et al.*, 1:18-cv-05068 (JGK) (Koeltl, J.) (ECF. No. 36) (granting request to appear as *amici* in support of plaintiff's motion for preliminary injunction filed three weeks after the motion); *Assad v. E.Merge Tech. Acquisition Corp.*, No. 1:21-cv-07072 (S.D.N.Y.) (ECF Nos. 46, 47) (granting requests to appear as *amici* in support of plaintiff's motion to dismiss filed nearly a month after the motion).

[4] Wu's proposed brief states in a footnote that she was "Of Counsel to Defendant Internet Archive . . . in connection with the year 2016 Macarthur grant application process." ECF No. 119-1, at 1 n.1. In fact, as IA has identified her, Wu's role was not so limited.

and Wu subsequently "crafted the legal theory behind Controlled Digital Lending" (SUMF ¶415).  Wu, along with Hansen and Courtney, was part of the group that worked closely with Bailey to formulate the plan of issuing both a statement describing controlled digital lending (the "Statement") (SUMF ¶419) and a white paper addressing the legal issues of controlled digital lending more fully (the "White Paper") (SUMF ¶420).  Together with Schultz, this same group of individuals served as co-authors of the Statement (*see* SUMF ¶¶422, 434) and collaborated on the White Paper (*see* SUMF ¶427).  Bailey has described Wu as a "friend[] of the Internet Archive."  SUMF ¶418.

**Library Futures/Kyle Courtney**: Internet Archive played a central role in the establishment of Library Futures, with the explicit aim of influencing the present litigation.  *See* July 15, 2022 Declaration of Elizabeth McNamara ("July 15 McNamara Decl.") Exhibit 1 (email from Internet Archive's Director of Partnerships Wendy Hanamura stating that she was "helping get [Library Futures] off the ground," and that Library Futures' "goals are key to winning the precedent-setting lawsuit by the publishers against the Internet Archive"); *see also* July 15 McNamara Decl. Exhibit 2 (email from Hanamura asking Chris Freeland and Jim Michalko – both Internet Archive employees – to "help us recruit some founding Coalition Partners & individuals for the new nonprofit, Library Futures").  In other words, Library Futures effectively serves as the public advocacy arm Internet Archive helped found specifically to influence this litigation, and the two organizations remain closely intertwined.  *See*, *e.g.*, Library Futures, International Statement of Solidarity, https://www.libraryfutures.net/international-statement-of-solidarity (Library Futures "International Statement of Solidarity" signed by Internet Archive); Library Futures, 2021 Annual Report, https://www.libraryfutures.net/annual-

5

report-2021 (Library Futures timeline listing collaborative events with Internet Archive in January, June, July, and August 2021); Library Futures, Who We Are, https://www.libraryfutures.net/who-we-are (listing Internet Archive as a "coalition partner"); Internet Archive, "Why CDL Now? Digital Libraries Past, Present & Future," http://blog.archive.org/2021/07/23/why-cdl-now-digital-libraries-past-present-future/ (announcing panel moderated by Bailey featuring Courtney).

The chair of Library Futures, and an author of its *amicus* brief, is Kyle Courtney, who collaborated extensively with Internet Archive in the development of the theory of controlled digital lending. Like Wu, he participated in the Workshop and was a co-author of the Statement. *See supra*. In addition, he co-authored the White Paper with David Hansen (SUMF ¶423), on which they worked closely with Bailey (SUMF ¶¶424, 433). Bailey conceded in private that Internet Archive had "more than an academic interest in [the White Paper] moving forward" (SUMF ¶427), but Courtney and Hansen's authorship was used to conceal Internet Archive's role in its development. SUMF ¶425 (email from Internet Archive's Chris Freeland regarding the White Paper stated that "IA is officially NOT leading the effort for the sake of being impartial"). Internet Archive has reimbursed Courtney for speaking at various Internet Archive-sponsored events. *See* July 15 McNamara Decl. Exhibit 3 (the "Bailey Tr.") at 16:17-17:11. Bailey has also described Courtney as a "friend[] of the Internet Archive." SUMF ¶418.

- **Authors Alliance/David Hansen**: The Authors Alliance received yearly donations from Brewster Kahle in recognition of its "good work" promoting controlled digital lending (*see* July 15 McNamara Decl. Exhibit 4), and Kahle serves on its advisory board. *See* Authors Alliance, About Us, https://www.authorsalliance.org/about/. The current executive

4858-6376-3753v.1 0092453-000002

director of the Authors Alliance is David Hansen. Like Courtney and Wu, Hansen was part of the core group responsible, in close collaboration with Internet Archive, for the development of the theory of CDL. He participated in the Workshop, and was a co-author of both the Statement and the White Paper. *See supra*. Bailey has also described Hansen as a "friend[] of the Internet Archive." SUMF ¶418.

- **Jason Schultz**: Schultz, like the other *amici*, belonged to the small group that worked with Internet Archive to develop the theory of CDL. He attended the Workshop and was a co-author of the Statement, and collaborated with the other *amici* on the White Paper. *See supra*.

In short, the IA *amici* are not merely incidentally aligned with Internet Archive's position in this litigation. Rather, they all played key roles in helping IA to develop its position in the first place, and their interest in this litigation is therefore fundamentally inseparable from Internet Archive's. Indeed, since IA's fair use defense relies heavily on the supposed validity of CDL, in effect each of IA's *amici* are key witnesses who have the integrity of their own work at stake. There can be not the slightest pretense of independence with these *amici*.

Given the IA *amici*'s status as *de facto* allies of Internet Archive, their briefs do not offer any unique perspective that is not available to the Court from IA's briefing, and would be of little help to the Court analyzing the issues in an objective manner. Instead, they would primarily aid IA by effectively allowing it to skirt the size limits imposed on the parties' summary judgment briefs. This Court already granted the parties' requests to enlarge the word limits on their summary judgment briefs, but expressed skepticism that even that relief was necessary. *See* ECF Nos. 80, 81 (granting the parties' joint request for enlarged briefing, but noting that "the Court seriously questions whether the requested word count is necessary"). Courts have rightly rejected similar

7

efforts to needlessly multiply the parties' briefing through *amicus* submissions.  *See*, *e.g.*, *Lehman XS Tr. v. Greenpoint Mortg. Funding, Inc.*, 2014 WL 265784, at *2 (S.D.N.Y. Jan. 23, 2014) (denying *amicus* request where "the Court has given the parties ample opportunity to argue their respective positions" and amicus "did not present unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide") (citation and internal quotation marks omitted); *Ryan*, 125 F.3d at 1064 (denying *amicus* request that would effectively have expanded party's brief from 45 to 62 pages).  Such submissions "are an abuse" (*Ryan*, 125 F.3d at 1063), and the Court should deny each of the requests.

## II.  The Parties' Interests Are Adequately Represented

The IA *amici's* requests cannot be justified on the basis that Internet Archive's interests have been inadequately represented in this litigation.  Internet Archive's lead counsel in this action is a leading firm in the field of intellectual property law, who have litigated the case aggressively through extensive discovery.  Under such circumstances, the submissions of the IA *amici* are unnecessary.  *See Lehman XS Tr.*, 2014 WL 265784 at *2 (denying *amicus* request where party was "represented by competent counsel that has given as good as it gets"); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 392, 394 (E.D.N.Y. 2011) (denying *amicus* motion where party's "memoranda of law . . . are well-researched and written"); *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992) (denying *amicus* motion where party's interests were "adequately represented by his counsel").

## CONCLUSION

For all the reasons outlined above, Plaintiffs respectfully request that the Court deny each of the motions of the IA *amici* for leave to file an *amicus* brief.

8

| | |
|---|---|
| Dated: New York, New York<br><br>July 15, 2022 | **DAVIS WRIGHT TREMAINE LLP**<br><br>*/s/ Elizabeth A. McNamara*<br>Elizabeth A. McNamara<br>Linda Steinman<br>John M. Browning<br>Jesse Feitel<br>Carl Mazurek<br>1251 Avenue of the Americas, 21st Floor<br>New York, NY 10020<br>Phone: (212) 489-8230<br>Email: lizmcnamara@dwt.com<br>       lindasteinman@dwt.com<br>       jackbrowning@dwt.com<br>       jessefeitel@dwt.com<br>       carlmazurek@dwt.com<br><br>**OPPENHEIM + ZEBRAK, LLP**<br><br>Matthew J. Oppenheim<br>Scott A. Zebrak (*pro hac vice*)<br>Danae Tinelli (*pro hac vice*)<br>4530 Wisconsin Avenue, NW, 5th Floor<br>Washington, DC 20016<br>Phone: (202) 480-2999<br>Email: matt@oandzlaw.com<br>       scott@oandzlaw.com<br>       danae@oandzlaw.com<br><br>*Attorneys for Hachette Book Group, Inc., HarperCollins Publishers LLC, John Wiley & Sons, Inc., and Penguin Random House LLC* |