# EXHIBIT 5

```
 1            UNITED STATES DISTRICT COURT
 2         FOR THE SOUTHERN DISTRICT OF NEW YORK
 3    ------------------------------------------------x
 4    HACHETTE BOOK GROUP, INC.,
      HARPERCOLLINS PUBLISHERS LLC,
 5    JOHN WILEY & SONS, INC., and
      PENGUIN RANDOM HOUSE LLC,
 6
 7              Plaintiffs,
 8    vs.                         Case No. 1:20-cv-04160-JGK
 9
      INTERNET ARCHIVE and DOES 1
10    through 5, inclusive,
11
12              Defendants.
13    ------------------------------------------------x
14
15      REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF
16                     SUSAN HILDRETH
17                 Monday, May 17, 2022
18
19
20
21
22
23
24    Reported By: Lynne Ledanois, CSR 6811
25    Job No. 5228055
```

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3    ------------------------------------------------x
 4    HACHETTE BOOK GROUP, INC.,
      HARPERCOLLINS PUBLISHERS LLC,
 5    JOHN WILEY & SONS, INC., and
      PENGUIN RANDOM HOUSE LLC,
 6
 7               Plaintiffs,
 8    vs.                        Case No. 1:20-cv-04160-JGK
 9
      INTERNET ARCHIVE and DOES 1
10    through 5, inclusive,
11
12               Defendants.
13    ------------------------------------------------x
14
15          Videotaped deposition of SUSAN HILDRETH,
16    taken in Walnut Creek, California, commencing at
17    9:01 a.m., on Tuesday, May 17, 2022 before Lynne
18    Ledanois, Certified Shorthand Reporter No. 6811
19
20
21
22
23
24
25    ///
```

```
                                                    Page 3
 1                    REMOTE APPEARANCES
 2
 3    Counsel for the Plaintiffs:
 4              DAVIS WRIGHT TREMAINE LLP
 5              BY:  ELIZABETH McNAMARA
 6                   JACK BROWNING
 7              Attorneys at Law
 8              1251 Avenue of The Americas
 9              21st Floor
10              New York, New York 10020
11              lizmcnamara@dwt.com
12              jackbrowning@dwt.com
13
14    Counsel for the Defendant Internet Archive:
15              DURIE TANGRI LLP
16              BY: JESSICA LANIER
17                  JOSEPH C. GRATZ
18              Attorneys at Law
19              217 Leidesdorff Street
20              San Francisco, California 94111
21              jlanier@durietangri.com
22              jgratz@durietangri.com
23    ALSO PRESENT:
24    David West, Videographer
25    Bill Craddock, Veritext Tech
```

```
 1            I N D E X   O F   E X A M I N A T I O N
 2
 3    Examination by:                                    Page
 4        Ms. McNamara                                10, 258
 5        Ms. Lanier                                      257
 6
 7
...
25
```

1      A    Yes.

2      Q    Are you suggesting that acquisition

3  budgets are at particular risk of being squeezed

4  because they are discretionary?

5           MS. LANIER:  Objection, vague as to

6  "squeezed."

7           THE WITNESS:  I am suggesting that it is

8  not uncommon that required expenses -- legally

9  required expenses, say insurance or updating of fire

10 equipment or a variety of expenses that are required

11 to keep a building open to the public may take

12 priority over expenses allocated to materials.

13 BY MS. McNAMARA:

14     Q    In Paragraph 109 of your report, you

15 indicate that "In light of the priority of materials

16 acquisition and the current state of limited budgets

17 for those materials, libraries would not reduce

18 their materials budgets if reliance on CDL for

19 certain digital content reduced their spending on

20 the particular titles that were provided through

21 CDL."

22          Do you see that?

23     A    Yes.

24     Q    Is it your expert opinion that libraries

25 will spend less money on licensing the e-book

1  editions of the particular titles that were provided
2  through CDL?
3            MS. LANIER:  Objection, vague.
4            THE WITNESS:  Yes.
5  BY MS. McNAMARA:
6       Q    In Paragraph 109 you also indicate that
7  "With CDL in place in libraries throughout the
8  United States, libraries would have additional
9  flexibility in what they acquire from publishers,
10 but would not spend any less on publishers'
11 products."
12           Do you see that?
13      A    Yes, I do.
14      Q    When you say, "With CDL in place in
15 libraries throughout the United States," are you
16 referring to what would happen if CDL became more
17 common than it is today?
18           MS. LANIER:  Objection, vague to the form
19 of the question.
20           THE WITNESS:  I'm referring to the
21 situation where CDL would be possibly used by more
22 libraries in the United States than it is today.
23 BY MS. McNAMARA:
24      Q    Do you have any sense as to the percentage
25 of public libraries that use CDL today?

Page 257

1  Q  So, Ms. Hildreth, earlier today
2  Ms. McNamara asked you some questions about how
3  libraries would reallocate spending if they
4  purchased fewer e-books, e-book licenses for books,
5  where those books were available on CDL.
6      Do you remember that?
7  A  Yes, I do.
8  Q  And where titles are available on CDL, do
9  you know whether any libraries have actually
10 purchased further e-book licenses for those titles?
11 A  I don't know.
12 Q  Do you know whether the availability of
13 books through the Internet Archive's Digital Lending
14 Library has, in fact, had any effect on demand for
15 e-book licenses?
16 A  I don't know.
17 Q  And if you wanted to know that, what kind
18 of data would you want to take a look at?
19 A  I would want you to look at the circulation
20 or use data that the library has in relation to the
21 e-books in question.
22 Q  Have you done that?
23 A  I have not done that.
24 Q  Do you have a view as to whether a library
25 would actually purchase fewer e-book licenses for

Page 258

1   titles that it makes available to patrons through
2   CDL?
3       A    I don't have a view on that and I think it
4   would be determined on a case-by-case basis depending
5   on what the libraries' needs would be in terms of
6   their collection.
7            MS. LANIER:  Okay.  Thank you.  That's all
8   I had on redirect.
9                    FURTHER EXAMINATION
10  BY MS. McNAMARA:
11      Q    Ms. Hildreth, this is what happens when
12  lawyers ask their questions, then I get to ask some
13  more.
14           You indicated that you would look at
15  certain information in order to ascertain whether
16  there has been any reduction in e-book licensing; is
17  that right?
18      A    Yes, that's right.
19      Q    Are you undertaking that endeavor?
20      A    At this time, I'm not undertaking that
21  endeavor.
22      Q    Do you plan to undertake that endeavor in
23  connection with any supplemental report that you
24  filed?
25      A    I have not made that decision yet.

Page 264

1    the specific scenario, the question.
2    BY MS. McNAMARA:
3         Q    When a library acquires a series of works
4    through e-book licensing -- strike that.
5              When a library acquires via CDL a series
6    of books, they are not paying licenses for those
7    works; isn't that right?
8              MS. LANIER:  Objection, mischaracterizes
9    the previous testimony and vague.
10             THE WITNESS:  They are not paying for
11   those licenses when they receive or obtain content
12   through CDL.
13             MS. McNAMARA:  Thank you.  That's your
14   testimony.  Then I'm done.
15             Do you have anything else, Jessie?
16             MS. LANIER:  Nothing else.  Thank you.
17             MS. McNAMARA:  Great.  Thank you very
18   much, Ms. Hildreth.  We appreciate it.
19             THE WITNESS:  Okay.
20             THE VIDEOGRAPHER:  This will conclude the
21   deposition Susan Hildreth.  The total number of
22   media units used in the deposition today was eight
23   and will be retained by Veritext Legal Solutions.
24             We're off the record at 4:44 p.m. Pacific
25   time.  Thank you.

Page 266

1    I, LYNNE M. LEDANOIS, a Certified
2    Shorthand Reporter of the State of California, do
3    hereby certify:
4         That the foregoing proceedings were taken
5    before me at the time and place herein set forth;
6    that a record of the proceedings was made by me
7    using machine shorthand which was thereafter
8    transcribed under my direction; that the foregoing
9    transcript is a true record of the testimony given.
10        Further, that if the foregoing pertains to
11   the original transcript of a deposition in a Federal
12   Case, before completion of the proceedings, review
13   of the transcript [X] was [] wasn't requested.
14        I further certify I am neither financially
15   interested in the action nor a relative or employee
16   of any attorney or party to this action.
17        IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19
20
21   Dated: May 19, 2022
22
23        *Lynne Marie Ledanois*
24        _____
          LYNNE MARIE LEDANOIS
25        CSR No. 6811