# EXHIBIT B


21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Elizabeth A. McNamara**
(212) 489-8230 tel
(212) 489-8340 fax

lizmcnamara@dwt.com

August 11, 2023

VIA ECF
Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

**Re:** *Hachette Book Group, Inc., et al. v. Internet Archive, et al.*, 20-cv-04160-JGK

Dear Judge Koeltl:

 Here is our letter summarizing the Plaintiffs' position on the one issue regarding the "Consent Judgment Subject to Appeal" that the parties submit to the Court for resolution.

 As indicated in the parties' joint letter, Paragraph E of the proposed "Consent Judgment Subject to Appeal" contains a mutually agreed "Permanent Injunction" enjoining the Internet Archive Parties from distributing the "Covered Books" in, from or to the United States in any digital or electronic form, among other provisions.  The term "Covered Book" is defined in Paragraph E.1.  Although the parties agree on most aspects of the definition, including that it will apply to all of the Publishers' commercially available books (not just the representative 127 Works in Suit), Internet Archive insists upon limiting the definition of Covered Books in the proposed injunction to books published by the Plaintiffs that are commercially available <u>as ebooks</u>, whereas Plaintiffs believe the definition of Covered Books should include books that are commercially available <u>in any format</u>.  In other words, IA wants to be free to scan and distribute digital copies of any print books that the Publishers or their authors have affirmatively decided not to publish as ebooks at this time.  Plaintiffs' position is in keeping with the nature of exclusive rights under the Copyright Act and ample precedent demonstrating that in making the decision to offer a work for sale in a given format, the copyright owner is not in a race to the market with downstream parties who have no copyright interests in the work and have done nothing to contribute to or finance the creative expression.

 This Court has already forcefully ruled that Internet Archive has no right to digitize and distribute a third party's print book as an ebook, even if it retains a physical copy of the book.  As this Court concluded, "What fair use does not allow . . . is the mass reproduction and distribution of complete copyrighted works in a way that does not transform those works and that creates directly competing substitutes for the originals." *Hachette Book Grp., Inc. v. Internet Archive*, --- F. Supp. 3d ----, 2023 WL 2623787 at *15 (S.D.N.Y. Mar. 24, 2023) (the "Order").  Whether under the fair use doctrine or the first sale doctrine, IA "does not have the right to scan [] books and lend the digital copies en masse."  Order at *8.  As this Court underscored, it is the

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4863-3845-4133v.1 0092453-000002

Hon. John G. Koeltl
August 11, 2023
Page 2

rightsholder, not IA, who holds the exclusive right to prepare and distribute derivative works, such as ebooks. *Id.* These conclusions apply equally in instances in which the print book publisher has decided to issue the work as an ebook and those limited circumstances in which it has decided not to do so. IA has no right to rob publishers of the right to make that decision.

Although the Plaintiffs publish the vast majority of their books in both print and ebook formats, the Plaintiffs periodically decide not to create ebook editions of certain print books that are poorly suited to the digital realm, including certain illustrated children's books and cookbooks – as IA has admitted. IA's Resp. to Ps' 56.1 ¶ 108. For example, at Art Spiegelman's request, Penguin Random House refrained from publishing the Pulitzer Prize-winning author's graphic novel *Maus* in ebook form for many years since the author felt the graphic novel would translate poorly to an ebook, yet IA took it upon itself to scan and digitally distribute *Maus*.

IA will undoubtedly argue that the injunction should be limited to books published in ebook form because the Works in Suit were published in both print and ebook formats – pointing to the Court's fourth factor analysis in its Order focused on the potential market harm to the Plaintiffs' library ebook market – and assert that the injunction would otherwise be overbroad. But an injunction is only overbroad "if it results in a likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." *The City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 145 (2d Cir. 2011) (internal quotation marks and citation omitted). IA's position elevates form over substance. The Internet Archive's unauthorized scanning and distribution of books like *Maus* that are only available as print books is unquestionably substantively the same as Internet Archive's conduct condemned by this Court. In all instances, "[t]here is nothing transformative about IA's copying and unauthorized lending of the Works in Suit." Order at *6. Further, when IA elects to take it upon itself to create an ebook version of a book without authorization, it is still engaging in unauthorized format-shifting and distribution of entire verbatim ebooks without compensating the authors or publishers. In short, an injunction covering works published in all formats is critical and consistent with the Court's Order.

Of key significance, the law is clear that the right to decide whether or not to publish a book in electronic format belongs to its authors and publishers, not IA. *See* Order at *6. As the Second Circuit held in *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 145-46 (2d Cir. 1998), in analyzing the market harm factor, "the copyright law must respect th[e righsholder's] creative and economic choice" not to "exploit[ a] market for derivative works." "It would . . . not serve the ends of the Copyright Act – i.e., to advance the arts – if artists were denied their monopoly over derivative versions of their creative works merely because they made the artistic decision not to saturate those markets with variations of their original." *Id.* at 146 (internal quotation marks and citation omitted). *See also Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 753 (S.D.N.Y. 2017) ("Congress did not provide a use-it-or-lose-it mechanism for copyright protection. Instead, Congress granted a package of rights to copyright holders, including the exclusive right to exploit derivative works, regardless of whether

Hon. John G. Koeltl
August 11, 2023
Page 3

copyright holders ever intend to exploit those rights. Indeed, the fact that any given author has decided not to exploit certain rights does not mean that others gain the right to exploit them.")

Further, in those limited instances in which the author and publisher have decided to publish a book only in a print edition, IA creates clear potential market harm to the print book market for the work because its straight, verbatim digital copy of the entire work is an obvious competing substitute for the original. Both this Court's Order (2023 WL 2623787 at *13), and the recent Supreme Court decision in *Andy Warhol Found. for the Arts v. Goldsmith* (143 S. Ct. 1258, 1276 & 1279 n.12 (2023)), recognize that the first and fourth factors of 17 U.S.C. §107 are closely linked and that where a work is not transformative and is instead a publicly distributed, direct copy of the entire work, it is likely to act as a substitute and thus undermine the purpose of the Copyright Act. As the Supreme Court pithily stated, substitution is "copyright's bête noire." 143 S. Ct. at 1274.

Finally, the Court's Order directly addressed the evidence submitted by IA's experts regarding IA's alleged lack of impact on the Publishers' print book market, holding that it fell far short of proving that point. 2023 WL 2623787 at *14. The Order also made clear that any asserted benefit to publisher sales created by IA could not tip the scales in favor of fair use when the other factors under §107 point so strongly against fair use here. Ultimately this Court concluded that there is "no case or legal principles [that] supports th[e] notion" that "lawfully acquiring a copyrighted print book entitles the recipient to make an unauthorized [digital] copy and distribute it in place of the print book so long as it does not simultaneously lend the print book"; indeed, as the Court stated, "Every authority points the other direction." *Id.* at *15. Under this rationale, the term Covered Book in Paragraph 1 of the injunction should read "…title commercially available for sale or license in any format," as proposed by Plaintiffs, so that the definition reaches all commercially available titles in which a Plaintiff holds exclusive rights, regardless of whether the author and publisher have chosen to distribute a particular book in ebook form. We appreciate the Court's time and attention to this matter.

Respectfully submitted,

/s/ Elizabeth A. McNamara

Elizabeth A. McNamara


cc:     To all counsel of record (via ECF)

4863-3845-4133v.1 0092453-000002